Kathleen **CARROLL**

v.

**EXXON COMPANY, U.S.A.**

**Civ. A. No. 76–3302.**

United States District Court, E. D. Louisiana, Section "F".

July 14, 1977.

John F. Robbert, Garon, Brener & McNeely, New Orleans, La., for plaintiff.

Gene S. Palmisano, c/o Exxon Co., U.S.A., New Orleans, La., for defendant.

MITCHELL, District Judge.

This matter was submitted to the Court on a former date, on cross-motions for summary judgment on the issue of liability. After careful consideration of the briefs and arguments of counsel, of the applicable law, and of the entire record, the Court now rules.

In August of 1976, Kathleen Carroll, a single working woman, applied for an Exxon credit card. In response to her application, the plaintiff received correspondence from defendant, dated September 14, 1976, whereby she was informed that her application for credit was denied; but no specific reason for the denial was provided. Thereafter, by her letter of September 28, 1976, Ms. Carroll requested Exxon to furnish her with the specific reasons for the credit denial. An undated response to this request revealed that the credit bureau which was contacted in regard to plaintiff's application did not respond adversely, but was unable to furnish sufficient information regarding her established credit. However, this undated letter, like that of September 14, 1976, did not contain the name of the credit bureau used by Exxon to investigate certain aspects of plaintiff's credit application.

The instant lawsuit was filed on October 26, 1976. Subsequently, on November 2, 1976, Exxon sent another letter to the plaintiff. This correspondence did contain the name and address of the credit bureau which had been contacted with regard to plaintiff's application. Counsel for both sides hotly contest the issues of whether or not these facts constitute a violation of either the Fair Credit Reporting Act [1] or the Equal Credit Opportunity Act.[2] However, both sides do agree that the material facts are not in dispute, and that the liability aspects of the case are in a posture for summary judgment disposition by this Court.

As her first cause of action, the plaintiff alleges that Exxon violated the terms of the Fair Credit Reporting Act (FCRA) by failing to properly identify the consumer reporting agency which handled her credit application. The FCRA, at 15 U.S.C. § 1681m(a), provides, in part, as follows:

> Whenever credit . . . for personal . . . purposes . . . is denied . . . either wholly or partly because of information contained in a consumer report from a consumer reporting agency, the user of the consumer report shall so advise the consumer against whom such adverse action has been taken and supply the name and address of the consumer reporting agency making the report.

Exxon's defense to this part of the complaint is threefold. The major thrust of Exxon's argument is based upon the premise that it did not deny credit to the plaintiff because of information contained in the report from the consumer reporting agency, Credit Bureau Services. Reliance upon such a defense is tenuous, at best. A mere cursory reading of Exxon's undated latter to the plaintiff reveals that the credit denial was, in fact, based on the report. The entire contents of that letter are reproduced below.[3] Counsel for Exxon does not

1. 15 U.S.C. § 1681, *et seq.*

2. 15 U.S.C. § 1691, *et seq.*

3. Thank you for your recent inquiry regarding your application for a credit card account.
   Our credit decisions consider such characteristics as maturity, occupation, size of family unit, apparent ease of contact, financial stability and credit references. *We have indicated below those item[s] that either individually or considered together are the reason[s] that influenced our decision to decline your application.*

. . . Credit Bureau . . .
The credit bureau we contacted in your case did not respond adversely, but unfortunately it could furnish little or no definitive information regarding your established credit.
                    Sincerely,
                    M. Hill
                    Credit Services
Credit report was furnished by
(Blank space)
New Orleans, Louisiana
(Emphasis added) (Parenthesis added)

direct his argument to the company's letter of September 14, 1976. We assume, however, that defendant's position in this regard would be equally applicable to that initial response to the plaintiff's credit card application.

■ Exxon next argues that it did actually furnish the plaintiff with the information required by the FCRA in its letter of November 2, 1976, which identified the credit bureau used in plaintiff's case. Like the first, this defense can be dismissed in short order. Assuming, *arguendo*, (as defendant argues) that the FCRA does not impose a minimum time standard upon the user of a credit report for the identification of the reporting agency to the consumer, it is obvious that full compliance with the Act is impossible after two violations have already been committed. Neither Exxon's letter of September 14, 1976, nor its subsequent undated letter to the plaintiff properly identified the consumer reporting agency used by Exxon in investigating Ms. Carroll's application.[3A] Exxon's *third* letter to the plaintiff, which supplied the name and address of the credit bureau, and which was written after notification of the instant lawsuit, does not constitute compliance with the FCRA, 15 U.S.C. § 1681m(a), when viewed in the context of the events and circumstances of this action.

■ Defendant's third defense to this part of the action is also unacceptable to this Court. Exxon seeks to avail itself of the "reasonable procedures" defense set out in the FCRA, 15 U.S.C. § 1681m(c):

> No person shall be held liable for any violation of this section if he shows by a preponderance of the evidence that at the time of the alleged violation he maintained reasonable procedures to assure compliance with the provisions of subsections (a) and (b) of this section.

Exxon has supplied various affidavits in the hope of showing that it has established and maintained reasonable procedures to assure compliance with the FCRA. However, as counsel for the plaintiff points out, at least one of defendant's supporting affidavits[4] actually supports the plaintiff's position. According to that affidavit:

> Exxon Company, U.S.A. has established and maintained since prior to August 19, 1976, a procedure whereby it furnishes specific reasons for denial of credit to a credit applicant *upon receipt of a request for such information.*

(Emphasis added.)

The FCRA, at 15 U.S.C. § 1681m(a), compels the user of a consumer report to inform the rejected credit applicant that the denial was based in whole or in part upon information received from the designated credit bureau or consumer reporting agency. There is no requirement in the FCRA that the consumer first request the name of such agency before disclosure by a user need be made. The language of 15 U.S.C. § 1681m(a) clearly requires such disclosure contemporaneously upon notification of the denial of credit.[5]

■ Exxon's second, undated response to the plaintiff's application likewise fails to meet the requirements of the "reasonable procedures" defense delineated in 15 U.S.C. § 1681m(c). That defense is quite similar to the defense provided to creditors for Truth In Lending actions, at 15 U.S.C. § 1640(c).[6]

---

**3A.** *See* note 5 *infra.*

**4.** Affidavit of the Unit Supervisor in the Credit Services Department at Exxon's Credit Card Center located in Houston, Texas.

**5.** See 1970 U.S.Code Cong. & Admin.News, page 4416, which provides as follows:

> The House amendment, which was agreed to by the conferees, deleted the requirement in section 615(a) that the consumer be required to submit a written request after denial of credit, insurance, or employment to obtain the name and address of the consumer reporting agency making the report. *The conference substitute now requires the user of the report to convey this information to the consumer immediately upon denial of credit, insurance, or employment.* (Emphasis added.)

**6.** 15 U.S.C. § 1640(c) provides:

> A creditor may not be held liable in any action brought under this section for a violation of this part if the creditor shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the mainte-

The meaning of "reasonable procedures" within the ambit of the Truth In Lending Act was well defined by the Seventh Circuit in *Mirabal v. General Motors Acceptance Corp.,* 537 F.2d 871 (CA7–1976). There the Court said, at page 878 of its opinion:

> . . . Congress required more than just the maintenance of procedures which were designed to provide proper disclosure calculations. Rather, it required procedures designed to avoid and prevent errors which might slip through procedures aimed at good faith compliance. This means that the procedures which Congress had in mind were to contain an extra preventative step, a safety catch or a re-checking mechanism. Congress left the exact nature of the preventative mechanism undefined. It is clear, however, that Congress required more than just a showing that a well-trained and careful clerk made a mistake.

In the instant case, defendant has produced no evidence to show that its compliance procedures, although probably designed to provide the proper information, contained any type of preventative mechanism for catching errors.

■ Having found that Exxon has violated the FCRA, our next task is to determine whether or not its violation was "willful" within the meaning of 15 U.S.C. § 1681n. There is no doubt that Exxon's letter of September 14, 1976, which informed the plaintiff that her credit application had been denied, neither supplied the identity of the consumer reporting agency whose report formed part of the basis for the denial, nor even attempted to do so. In fact, as we have already mentioned, Exxon would not furnish its reasons for a denial of credit to an applicant unless it was first specifically requested to provide such information.[7] We find that Exxon's failure to properly identify the consumer reporting agency in its letter of September 14, 1976, under the

facts and circumstances of this case, constitutes willful non-compliance with the requirements of the FCRA, within the meaning of 15 U.S.C. § 1681n.

Therefore, IT IS ORDERED, ADJUDGED, AND DECREED that the motion of plaintiff, Kathleen Carroll, for summary judgment on the issue of liability under FCRA, be and the same is hereby GRANTED;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the motion of defendant, Exxon, for summary judgment under the FCRA, be and the same is hereby DENIED;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this matter be referred to a Magistrate for a determination of the amount of damages, both actual and punitive, and attorney's fees, pursuant to 15 U.S.C. § 1681n.

■ The plaintiff also contends that Exxon violated the terms of the Equal Credit Opportunity Act (ECOA) by failing to provide her with the specific reasons for the credit denial, and by discriminating against her on the basis of marital status in evaluating her credit application.

The ECOA provides, in pertinent part, at 15 U.S.C. § 1691(a)(1):

> (a) It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—
>
> (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided that applicant has the capacity to contract);
>
> *     *     *     *     *     *

The ECOA also provides for the promulgation of regulations by the Federal Reserve Board to carry out the purposes of the Act.[8] One such regulation, 12 CFR 202.5(m)(2), provides that "[a] creditor shall provide

---

nance of procedures reasonably adapted to avoid any such errors.

The FCRA is a subdivision of the Consumer Credit Protection (Truth In Lending) Act. See *Millstone v. O'Hanlon Reports, Inc.,* 528 F.2d 829 (CA8–1976).

**7.** *See* note 4 *supra.*

**8.** 15 U.S.C. § 1691b(a). These regulations are set out at 12 CFR 202.001, *et. seq.,* commonly referred to as "Regulation B."

each applicant who is denied credit or whose account is terminated the reasons for such action, if the applicant so requests." Ms. Carroll takes the position that Exxon's undated letter, which was sent to her as a result of her request for specific reasons for the credit denial, violated the plain terms of 12 CFR 202.5(m)(2) in failing to provide the reasons for the negative action.

Counsel for Exxon argues that Exxon's undated letter and its letter of November 2, 1976, satisfy the requirement of 12 CFR 202.5(m)(2) to provide reasons for the credit denial.[9] The legal issue before this Court, then, is whether Exxon's responses to the plaintiff satisfy the notification requirement of 202.5(m)(2).

The ECOA, at 15 U.S.C. § 1691(d)(3) provides that "[a] statement of reasons meets the requirements of this section *only if it contains the specific reasons for the adverse action taken* (Emphasis added)." Our independent examination of the record of this case reveals that a number of factors contributed to the denial of Ms. Carroll's credit card application. For example, the plaintiff did not have a major credit card, she did not list a savings account on her application, she had been employed for only one year, and she had no dependents. However, for some reason, Exxon chose only to list, as its reasons for the denial of credit, that the Credit Bureau which had been contacted could furnish little or no definitive information regarding plaintiff's established credit.

The legislative history of the 1976 amendments to the ECOA is particularly instructive in construing the congressional intent behind the passage of the Act:

> The requirement that creditors give reasons for adverse action is, in the Committee's view, a strong and necessary adjunct to the antidiscrimination purpose of the legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices. *Yet this requirement fulfills a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit. Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already over-extended financial situation. In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake.*[10]

Therefore, even if we view Exxon's undated response to the plaintiff to have been properly amended and corrected by the letter of November 2, 1976, it is clear that Exxon has failed to meet the requirements of 15 U.S.C. § 1691(d)(3) and 12 CFR 202.5(m)(2). Exxon's responses to plaintiff's request for specific reasons for the credit denial fail to achieve the informative purposes legislated in the ECOA.[11] We do not feel that this decision will place any heavier burden on creditors than that intended by Congress to aid the consumer in the search for reliable and informative credit information.

█ Exxon's reliance on the defense propounded at 12 CFR 202.11(a) is inapposite. That section provides that, if a creditor fails to comply with 202.5(m) due to a "mechanical, electronic or clerical error made in good faith," it shall not be a violation of the

---

**9.** For the complete contents of Exxon's undated letter, *see* note 3 *supra.* The letter of November 2, 1976, is the same as the undated predecessor, except that it properly identified the Credit Bureau used in assessing plaintiff's application for the credit card.

**10.** 1976 U.S.Code Cong. & Admin.News, page 406. (Emphasis added).

**11.** In fact, Exxon's initial letter to the plaintiff, dated September 14, 1976, in which it informed her that her application had been denied, contravened congressional intent by failing to notify the rejected applicant of her right to a statement of reasons on request. *See* 1976 U.S. Code Cong. & Admin.News, page 410.

section if "the creditor shows by a preponderance of the evidence that at the time of the noncompliance the creditor had established and was maintaining suitable procedures to assure compliance with the section." In the instant case, we have not found that Exxon's failure to comply with the ECOA and Regulation B resulted from its failure to initially supply plaintiff with the name of the Credit Bureau used to investigate her credit application. Rather, our decision is aimed at Exxon's failure to properly inform the plaintiff of the actual reasons for the credit denial. Therefore, the defense is inapplicable to this part of the plaintiff's argument.[12]

■ Finally, Ms. Carroll contends that, in evaluating her credit application, Exxon considered the number of her dependents, which evinces a bias on the basis of marital status in violation of 12 CFR 202.5(f) and 202.5(h).[13] Plaintiff argues that, since it is unusual for an unmarried person to have any dependents, the fact that Exxon considers the number of the applicant's dependents in its scoring system constitutes discrimination on the basis of marital status, which the ECOA condemns. We disagree. We cannot conclude that, as a matter of law, Exxon's interrogatory regarding de-

pendency violates Regulation B or the ECOA. The regulations cited by plaintiff in this regard do not prohibit the credit grantor's investigation into this area. Dependency is not limited to one's biological descendants, and is not necessarily included in "assumptions relating to the likelihood of any group of persons bearing or rearing children" within the ambit of 12 CFR 202.-5(h). Furthermore, we are aware that Congress has provided some guidance as to the allocation of the burdens of proof necessary to determine the existence of discrimination under the ECOA.[14] The credit grantor must meet the burden of showing that any given requirement has a manifest relationship to the creditworthiness of the applicant,[15] but *only* if the complaining party has first made out a prima facie case of discrimination, *i. e.,* has shown that the credit application's interrogatories result in the selection of credit card holders in a pattern significantly different from that of the pool of applicants.[16] The plaintiff in this case has not made out a prima facie case of discrimination under the ECOA.[17] Therefore, since plaintiff has failed to sustain her onus under the law, Exxon is not required to show the relationship between the subject interrogatory and the creditworthiness of the applicant.

12. In fact, even had we found that Exxon violated the ECOA by failing to properly and timely identify the consumer reporting agency involved herein, the defense supplied in 202.11 would not protect the defendant under these circumstances. *See Mirabal v. General Motors Acceptance Corp.,* 537 F.2d 871, 878 (CA7–1976), and the discussion of that case, *supra,* in relation to the FCRA portion of the case.

13. 12 CFR 202.5(f) provides:
   A creditor shall not take sex or marital status into account in a credit scoring system or other method of evaluating applications.
   12 CFR 202.5(h) provides, in part:
   [A creditor shall not] consider in evaluating the creditworthiness of an applicant aggregate statistics or assumptions relating to the likelihood of any group of persons bearing or rearing children, . . .

14. *See* 1976 U.S.Code Cong. & Admin.News, page 406, where it is written:
   In determining the existence of discrimination . . . courts or agencies are free to look at the effects of a creditor's practices as well as the creditor's motives or conduct in individual

transactions. Thus, judicial constructions of anti-discrimination legislation in the employment field, in cases such as *Griggs v. Duke Power Company,* 401 U.S. 424 [91 S.Ct. 849, 28 L.Ed.2d 158] (1971), and *Albemarle Paper Company v. Moody* (U.S. Supreme Court, June 25, 1975), [422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280] are intended to serve as guides in the application of this Act, especially with respect to the allocations of burdens of proof.

15. *Griggs v. Duke Power Company,* 401 U.S. 424, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971).

16. *Albemarle Paper Company v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975).

17. In the Fifth Circuit, a prima facie case of discrimination may be established by statistical evidence, and statistical evidence alone. *Rodriguez v. East Texas Motor Freight,* 505 F.2d 40 (CA5–1974). Of course, such a case may also be established by statistical evidence in conjunction with other evidence. *Sabala v. Western Gillette, Inc.,* 516 F.2d 1251 (CA5–1975).

Therefore, for these reasons, IT IS ORDERED, ADJUDGED, AND DECREED that the motion of plaintiff, Kathleen Carroll, for summary judgment on the issue of liability under 12 CFR 202.5(m)(2) of the ECOA, be and the same is hereby GRANTED, and that plaintiff's motion for summary judgment under 12 CFR 202.5(f) and 202.5(h) is hereby DENIED;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the motion of defendant, Exxon, for summary judgment under the ECOA, be and the same is hereby DENIED;

IT IS FURTHER ORDERED that this matter be referred to a Magistrate for a determination of the amount of damages, both actual and punitive, and attorney's fees, pursuant to 15 U.S.C. § 1691e(a), (b), and (d).