Elizabeth SAYERS, Plaintiff,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant.

No. 79–0714–CV–W–5.

United States District Court, W. D. Missouri, W. D.

May 29, 1981.

---

Jay T. Grodsky, Kansas City, Mo., for plaintiff.

Thomas J. Cox, Jr., Kansas City, Mo., for defendant.

## ORDER AND MEMORANDUM

SCOTT O. WRIGHT, District Judge.

Plaintiff has brought this action pursuant to the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691 *et seq.*, alleging that defendant's refusal to extent credit to her was discriminatory on the basis of race, sex, and/or marital status. Defendant contends that its refusal was based upon a determination that the plaintiff was a poor credit risk, and its decision was, therefore, nondiscriminatory. Trial was held before the Court on May 8, 1981. After careful consideration of the evidence, the Court finds that defendant violated the technical requirements of the ECOA but did not discriminate against plaintiff on the basis of her race, sex, or marital status in its refusal to extend credit to her. For the reasons stated, judgment is entered in favor of plaintiff and against defendant for violation of the notification requirements of the ECOA, and judgment is entered in favor of defendant and against plaintiff on the issue of discrimination.

## FINDINGS OF FACT

1. Plaintiff is a black, married, adult female. She is a citizen of the United States and a resident of the State of Missouri.

2. Defendant is a New York corporation duly authorized to conduct business in the State of Missouri. Defendant finances the sale of new and used automobiles for General Motors by purchasing installment sale contracts which have been executed by the dealer and the customer. Defendant acted upon more than 150 credit applications dur-

ing the calendar year preceding the calendar year in which plaintiff's credit application was denied.

3. In April, 1979, plaintiff agreed to purchase from Roach Cadillac, Inc. a used 1976 Cadillac.

4. Plaintiff advised Roach Cadillac of her desire to obtain financing from the defendant, General Motors Acceptance Corporation (GMAC), in order to purchase the car.

5. Plaintiff completed a Customer Statement (credit application) listing information regarding her income, debts and credit history. Roach Cadillac sent to the defendant this information, together with information regarding the type of automobile the plaintiff sought to purchase and the amount of the purchase price to be financed.

6. After receiving plaintiff's application for credit, GMAC made a routine investigation of plaintiff's credit background.

7. Upon contacting a finance company which plaintiff listed as a credit reference on her credit application, defendant discovered that payments made on the account were frequently late, and on occasion substantially late.

8. Defendant, in the course of its credit investigation, obtained a report from the Kansas City Credit Bureau regarding plaintiff's credit history. That report indicated the existence of delinquent credit obligations in plaintiff's credit history.

9. Plaintiff did not request that the credit of her husband, Stephen, be taken into account in determining her creditworthiness.

10. The defendant did not request the individual credit history of plaintiff's husband. The defendant did request the credit history of plaintiff and her husband on joint accounts.

11. The credit report obtained by defendant from the Kansas City Credit Bureau contained information relating to plaintiff's husband's individual credit history, as well as information relating to the joint accounts of plaintiff and her husband.

12. Defendant did not consider the individual credit history of plaintiff's husband in refusing to extend credit to plaintiff.

13. In reliance upon the information received from the finance company and the Kansas City Credit Bureau, the defendant found that plaintiff was not creditworthy and declined to extend credit to her.

14. On April 16, 1979, defendant mailed a form letter to plaintiff which listed the specific reasons why defendant had rejected her credit application.

15. This letter stated that plaintiff had been denied credit because defendant had received unfavorable information with respect to "delinquent credit obligations" and "foreclosure, repossession, suit or bankruptcy."

16. Plaintiff's credit history showed numerous instances where she had been delinquent in her credit obligations.

17. Plaintiff did not have a "foreclosure, repossession, suit or bankruptcy" in her credit history.

18. Plaintiff's credit history showed that an account she held jointly with her husband had been turned over to a collection agency because of delinquent payments. This fact is indicated on the credit bureau report by the code letters "CLA."

19. Mr. Morgan was a credit supervisor for defendant at the time plaintiff applied for credit and made the decision to deny plaintiff credit.

20. Mr. Morgan saw the code letters on the credit bureau report which indicated that one of plaintiff's joint accounts had been turned over to a collection agency. He interpreted these code letters to mean a collection "suit."

21. Because of this interpretation, Mr. Morgan indicated on plaintiff's rejection letter that he had received unfavorable information about plaintiff's credit history with respect to a "foreclosure, repossession, *suit* or bankruptcy" (emphasis added).

22. The fact that an account is turned over to a collection agency does not indicate that a collection suit has been filed.

23. Mr. Morgan was mistaken when he interpreted plaintiff's credit history to include a "foreclosure, repossession, suit or bankruptcy."

24. Mr. Morgan's error was inadvertent.

25. After receiving the notice of April 16, 1979, plaintiff and her husband went to Kansas City Credit Bureau to look at her file to see if there was anything in her credit history which would indicate to the defendant that she had a "foreclosure, repossession, suit or bankruptcy" against her.

26. Plaintiff saw that nothing in her credit history indicated a "foreclosure, repossession, suit or bankruptcy."

27. Plaintiff and her husband went to defendant's offices and orally informed an unidentified employee of defendant of the error.

28. Plaintiff and her husband were informed that Mr. Morgan was not in, and another employee, also unidentified, was called in to assist them.

29. Plaintiff informed this employee of the error. He obtained plaintiff's credit file, and after examining it, he admitted a mistake had been made with reference to the reason listed as "foreclosure, repossession, suit or bankruptcy."

30. Plaintiff orally requested that her loan application be reconsidered.

31. Defendant's employee rudely refused to reconsider the loan application and refused to discuss it with plaintiff.

32. Plaintiff was humiliated and embarrassed by the treatment she received from defendant's employee.

33. Defendant never issued a written correction of the error contained in the first notice of adverse action.

34. The first reason listed on plaintiff's notice of adverse action, delinquent credit obligations, was sufficient reason for defendant's refusal to extent credit to plaintiff.

35. Defendant extended credit to other applicants who had delinquent credit obligations in their credit history, but there were extenuating circumstances in each case that were not present in plaintiff's case, such as prior dealings with the applicant or a greater likelihood of payment because the applicant would have a high equity in the car.

36. Plaintiff had never dealt with defendant before, and her equity in the car she was attempting to purchase would have been minimal in relation to the entire transaction. In addition, she was still paying off the loan on the car she was going to trade-in for the Cadillac she was trying to purchase from Roach Cadillac. These facts, together with plaintiff's credit history, convinced defendant that this transaction would have been a poor business deal.

37. Defendant extends credit to creditworthy females.

## CONCLUSIONS OF LAW

1. The Court has subject matter jurisdiction over this action pursuant to the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq.

2. In refusing to extend credit to plaintiff, the defendant did not discriminate against plaintiff on any basis prohibited by 15 U.S.C. § 1691 et seq. or 12 C.F.R. §§ 202.4, 202.5, 202.6, or 202.7.

3. Defendant failed to comply with 15 U.S.C. § 1691(d)(2) and 12 C.F.R. § 202.-9(b)(2) by issuing a notification of its adverse action containing a principal reason which had no basis in fact.

4. Defendant's failure to comply with this section was inadvertent.

5. Defendant violated 12 C.F.R. § 202.-9(e) by failing to provide plaintiff with a corrected notice of adverse action after plaintiff informed them of the error contained in the first notice which failed to comply with 15 U.S.C. § 1691(d)(2).

6. Defendant's violation of this section entitles plaintiff to damages as provided under 15 U.S.C. § 1691e.

7. Plaintiff is entitled to actual damages of $500 for embarrassment and humiliation which she suffered as a result of defendant's failure to comply with 15 U.S.C.

§ 1691(d)(2) and 12 C.F.R. § 202.9(e). She is also entitled to punitive damages in the amount of $500 and reasonable attorney's fees, which will be computed by the Court at a later time.

## OPINION

Plaintiff filed this action under the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 *et seq.*, alleging that she has been discriminated against by defendant on account of her race, sex, and/or marital status. Plaintiff also alleges that defendant violated the notification requirements of the ECOA, 15 U.S.C. § 1691(d)(2), by listing a reason which had no basis in fact on its notification of adverse action and by failing to correct this error after being notified by plaintiff. The complaint prays for actual damages, punitive damages, and attorney's fees.

### Charges of Discrimination Under the ECOA

The ECOA, 15 U.S.C. § 1691(a), provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction —(1) on the basis of race, color, religion, national origin, sex or marital status, or age...." Plaintiff contends that the defendant discriminated against her on the basis of race, sex, and/or marital status. Congress has determined that the proper test for determining whether a creditor has engaged in the prohibited discrimination is the "effects test" or disparate impact theory as outlined by the Supreme Court in the employment cases of *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), and *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). 12 C.F.R. § 202.6(a) note 7. *See also, Cragin v. First Federal*

*Savings & Loan Ass'n*, 498 F.Supp. 379 (D.Nev.1980); *Cherry v. Amoco Oil Co.*, 490 F.Supp. 1026 (N.D.Ga.1980); *Vander Missen v. Kellogg-Citizens National Bank*, 481 F.Supp. 742 (E.D.Wis.1979); *Carroll v. Exxon Co., U. S. A.*, 434 F.Supp. 557 (E.D.La. 1977).

Under the "effects test", the plaintiff has the initial burden of making out a prima facie case of discrimination by showing that the defendant's requirements for accepting credit applicants result in the acceptance of credit applicants in a pattern significantly different from that of the general pool of applicants. *Carroll v. Exxon Co., U. S. A., supra*, 434 F.Supp. at 563. After plaintiff has met this burden, the creditor must meet the burden of showing that any requirement has a manifest relationship to the creditworthiness of the applicant. *Id.* The prima facie case under the "effects test" is conventionally proved by a statistical comparison of the representation of the protected class in the applicant pool with representation in the group actually accepted from the pool. At least one other court has noted, however, that the use of a statistical methodology in an ECOA case is quite difficult for a plaintiff because the ECOA specifically prohibits inquiry by the creditor into the race, sex, or marital status of a credit applicant, except in loans secured by residential real estate. *Cherry v. Amoco Oil Co., supra*, 490 F.Supp. at 1030. Direct statistical evidence is not readily available to a plaintiff, and a prima facie case of discrimination must be proved by other means.

In this case, plaintiff attempted to carry her burden by using the disparate treatment theory as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[1] Plaintiff

---

1. Although Congress has indicated in the ECOA's legislative history that an "effects test" should be used in actions brought under the ECOA, this Court does not believe that Congress intended the "effects test" to be the exclusive test for discrimination. Rather, Congress was merely emphasizing the minimum requirements in a prima facie case of discrimi-

nation. Under the "effects test," discriminatory intent need not be proved, and a plaintiff establishes a prima facie case merely by showing that a facially neutral policy has the effect of discriminating against a protected group. Some fact situations, however, do not easily lend themselves to a disparate impact theory, and it would violate the spirit of the ECOA to

introduced into evidence credit files of approximately twenty-five males who had been extended credit by defendant in spite of the fact that they, like the plaintiff, had delinquent credit obligations in their credit histories. This evidence establishes plaintiff's prima facie case of sex discrimination. The burden now shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the action it did against plaintiff. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Defendant met this burden by showing that for each of these applicants there were extenuating circumstances not present in plaintiff's case which justified extending credit to these applicants. Each applicant either had prior dealings with defendant, or the applicant's equity in the automobile would have been great enough to insure payment of the loan. Neither of these factors were present in plaintiff's case, and plaintiff failed to show that the reasons articulated by defendant were pretextual. Defendant's disparate treatment of plaintiff's loan application and the loan applications introduced by plaintiff at trial resulted from an exercise in business judgment and not from sexual discrimination. Plaintiff did not introduce any evidence which would indicate discrimination on the basis of race or marital status. Defendants, on the other hand, introduced evidence to show that they extend credit to creditworthy females. Plaintiff failed to carry her burden of proof in establishing discrimination within the meaning of the ECOA, and judgment is entered in favor of defendant on the issue of discrimination.

*Violation of the Notification Requirements of the ECOA*

■ In addition to prohibiting discrimination, the ECOA also sets forth certain notification requirements a creditor must satisfy to be in compliance with the Act. If a creditor fails to satisfy these requirements, he is in violation of the ECOA, regardless of whether he engaged in any prohibited discriminatory action.[2] *Carroll v. Exxon Co., U. S. A., supra.* The ECOA, 15 U.S.C. § 1691(d), requires the creditor to supply the rejected applicant with a statement of specific reasons for the credit denial. Implicit in this section is the requirement that there must be some basis in fact for the reasons given. A creditor cannot satisfy the notification requirement by supplying the applicant with specific reasons for the adverse action which are based upon the creditor's misinterpretation of an applicant's credit history. Such a standard would open the door to the very type of discrimination the ECOA was designed to prevent. The notification requirement was designed to discourage discrimination by forcing creditors to give specific reasons for their adverse actions.[3] Allowing a creditor to give a reason which has no basis in fact, but merely represents a creditor's subjective belief, completely subverts the purpose of the notification requirement.

■ In the case now before the Court, one of the specific reasons defendant gave plaintiff for rejecting her credit application was that they had received unfavorable information with respect to a "foreclosure, repossession, suit or bankruptcy" in her

foreclose some plaintiffs simply because they have been discriminated against on an individual basis rather than on a class basis. Support for this argument is found in the ECOA's legislative history in a Senate Report which states that "[i]n determining the existence of discrimination . . . courts or agencies are free to look at the effects of a creditor's practices as well as the creditor's motives or conduct in individual transactions." S.Rep.No.589, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Admin.News 403, 406.

**2.** The legislative history is clear that Congress intended the notification requirement to not

only discourage discrimination, but to fulfill "a broader need." Rejected applicants are to have the educational benefit of learning where and how their credit status is deficient, and "[i]n those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake." 1976 U.S.Code Cong. & Admin.News 406. *See also, Carroll v. Exxon Co., U. S. A.,* 434 F.Supp. 557 (E.D.La.1977).

**3.** *Id.*

credit history. Defendant's employee, Mr. Morgan, testified that he had interpreted a notation on her credit report from the Kansas City Credit Bureau to mean that a collection suit had been filed against an account held jointly by plaintiff and her husband. An employee of the Kansas City Credit Bureau testified that this notation merely indicated that the account had been turned over to a collection agency, and the notation did not indicate that a suit had been filed. This specific reason given by defendant for rejecting plaintiff's credit application was based upon a misinterpretation of the credit bureau report and not upon any facts in plaintiff's credit history and, therefore, failed to comply with the notification requirement of the ECOA. However, 12 C.F.R. § 202.9(e) provides that a failure to comply with the notification requirement does not constitute a violation when it is caused by an inadvertent error. The Court believes that Mr. Morgan's misinterpretation of plaintiff's credit report was inadvertent and does not, in and of itself, constitute a violation of the Act. But, Section 202.9(e) further provides that after discovering the error, the creditor is obligated to correct it and begin compliance with that section. Plaintiff orally notified defendant of the error, but defendant wilfully refused to correct it. Defendant's wilful refusal to comply with the notification requirements after being informed of its error constitutes a violation of the ECOA, and plaintiff is entitled to damages under 15 U.S.C. § 1691e.

Section 1691e provides that "[a]ny creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant...." No actual out-of-pocket damages were proved by plaintiff. Plaintiff's loan application would have been rejected by defendant even if no violation of the ECOA had occurred. The delinquent credit obligations in plaintiff's credit history, combined with the fact that plaintiff's equity in the automobile would have been minimal, were sufficient reasons for defendant's refusal to extend credit to plaintiff. There-

fore, plaintiff did not suffer out-of-pocket loss as a result of defendant's failure to comply with ECOA notification requirements. On the other hand, plaintiff testified that defendant's treatment of her when she notified them of the error made in her notification of adverse action caused her embarrassment, humiliation, and mental distress. Defendant's employee was rude to her, refused to correct the error he admitted had been made, and refused to even discuss the matter with her. In addition, the defendant allowed Roach Cadillac to continue believing that there was a "foreclosure, repossession, suit or bankruptcy" in plaintiff's credit history, which was also a source of embarrassment, humiliation and mental distress for plaintiff. The ECOA has been interpreted to provide compensation for embarrassment, humiliation and mental distress, *Shuman v. Standard Oil Co.*, 453 F.Supp. 1150 (N.D.Cal.1978), and this type of emotional harm is properly considered as an element of actual damage even though it does not represent out-of-pocket loss. *Cf., Smith v. Anchor Building Corp.*, 536 F.2d 231, 236 (8th Cir. 1976) (action under Title VIII). Plaintiff's credible testimony that defendant's treatment of her embarrassed and humiliated her is sufficient proof that she was damaged in this respect. *Smith v. Anchor Building Corp., supra.* Although it is extremely difficult to place a dollar value on emotional harm, after considering all of the circumstances, the Court finds that an amount of $500 fairly compensates plaintiff for the emotional harm she suffered as a result of defendant's treatment of her.

Section 1691e also provides that "[a]ny creditor ... who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000 ...." This section has been interpreted to require a minimum finding that the creditor acted in reckless disregard of the requirements of the law. *Shuman v. Standard Oil Co., supra*, 453 F.Supp. at 1155. The Court does not need to find that the defendant acted

maliciously, wantonly, or oppressively. *Id.* The minimum requirement has been met in this case. Plaintiff notified defendant of the error that had been made. The defendant's employee examined plaintiff's credit file and admitted that there was an error. Not only did he refuse to correct it, he refused to even discuss it with plaintiff. At a minimum, he recklessly disregarded any legal duty that he owed plaintiff to supply her with a corrected statement of reasons. Punitive damages are recoverable under Section 1691e in the amount of $500.

Section 1691e also provides that a successful plaintiff is entitled to attorney's fees. At trial, the Court stayed proof of attorney's fees until after a finding of liability had been rendered. The plaintiff's attorney should submit an affidavit setting forth his attorney's fees. The defendant may challenge the amount of attorney's fees requested by submitting its brief to the Court. The Court will then determine the amount of attorney's fees which should be awarded, and final judgment will be entered.

For the foregoing reasons, it is hereby

ORDERED that judgment is entered in favor of plaintiff and against the defendant for $500 actual damages and $500 punitive damages. Costs are assessed against defendant. It is further

ORDERED that plaintiff's attorney is to submit proof of his attorney's fees within fifteen (15) days from the date of this order. Defendant's response is to be filed within ten (10) days after that date. It is further

ORDERED that this judgment will not be final until after the Court has determined the amount of attorney's fees to be awarded.