Bruce THOMPSON and Paula Forney-Thompson, Plaintiffs-Appellants,

v.

GALLES CHEVROLET COMPANY and General Motors Acceptance Corporation, Defendants-Appellees.

No. 82–1052.

United States Court of Appeals, Tenth Circuit.

Dec. 17, 1986.

Richard J. Rubin of Sante Fe, N.M., for plaintiffs-appellants.

Jason W. Kent of Poole, Tinnin, & Martin, Albuquerque, N.M. (Douglas Seegmiller of Poole, Tinnin, & Martin, Albuquerque, N.M., with him on brief), for defendant-appellee Galles Chevrolet Co.

Jerrald J. Roehl of Jerrald J. Roehl & Associates, Albuquerque, N.M. (Nathan H. Mann of Jerrald J. Roehl & Associates, with him on brief), for defendant-appellee General Motors Acceptance Corp.

Before HOLLOWAY, Chief Judge, McKAY, Circuit Judge, and KANE, District Judge.[*]

KANE, District Judge.

Plaintiffs ask this court to determine whether the district court erred in granting defendant Galles' motion for summary judgment, in denying plaintiffs' cross-motion for summary judgment, and in dismissing the complaint. The issue before the court concerns the district court's interpretation of Regulation B, 12 C.F.R. § 202, promulgated under the Equal Opportunity Credit Act, 15 U.S.C. § 1691 *et seq.* For the reasons which follow, we affirm.

## I. FACTUAL CONTEXT

The material facts of the case are not complicated. On May 27, 1980, plaintiffs went to the Galles dealership showroom to view a Chevrolet pickup truck. After deciding on a suitable vehicle, they signed a written purchase order. They also filled out a credit application for financing from defendant GMAC. The application was accompanied by a personal check for $2,000 as a down payment.

Galles duly submitted the credit application to GMAC for a credit check. The application noted plaintiffs' debt for certain outstanding bank loans. GMAC, however, was unable to verify those loans because the credit application did not list the loan account numbers. When plaintiffs returned to the dealership on the following day, they were informed of the deficiency

---

[*] Honorable John L. Kane, Jr., United States District Judge for the District of Colorado, sitting by designation.

in their credit application. Plaintiffs, however, did not believe any additional information was necessary. Galles' agent advised plaintiffs they would not be able to complete the purchase of the truck on credit in the absence of that information. Believing their credit application to have been finally denied, plaintiffs demanded return of the $2,000 check. They also asked for rescission of the purchase order agreement. Galles complied with both requests immediately.

Two weeks later, plaintiffs purchased a Chevy pickup from another local dealer. They again applied for GMAC credit, "supplying some of the information which had been requested by Galles, as well as adding additional information which Galles had not received." Order of the District Court, at 3; *see* Forney-Thompson deposition at 25; Thompson deposition at 28–30. GMAC granted the application and the purchase was consummated.

Plaintiffs then brought this suit for equitable relief and money damages to redress defendants' alleged violations of ECOA and Regulation B.

## II. LEGAL CONTEXT

The Equal Credit Opportunity Act is designed primarily to ensure fairness in creditors' consideration of credit applications. *See* 15 U.S.C. § 1691(a). Regulation B, promulgated under the authority of 15 U.S.C. § 1691b, incorporates this purpose, along with other goals. 12 C.F.R. § 202.-1(b) (1986).

Resolution of this case centers on § 202.-9, the notification provision of Regulation B. As of 1981, when the case was decided by the trial court, the relevant provisions of § 202.9 stated as follows:

(a)(1) A creditor shall notify an applicant of action taken within:

\* \* \* \* \* \*

(ii) 30 days after taking adverse action on an uncompleted application;

\* \* \* \* \* \*

(2) Any notification given to an applicant against whom adverse action has been taken shall be in writing....

Adverse action, in turn, is defined in both ECOA and Regulation B. The ECOA definition, in pertinent part, describes adverse action as "a denial or revocation of credit." The noteworthy portion of the regulation refines the ECOA definition with this language:

A refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered.

Plaintiffs' main contention within this regulatory framework is that defendants failed to notify them in writing of the adverse action[1] taken on the Galles credit application. Such a violation would presumably expose defendants to civil liability under 15 U.S.C. § 1691e. This was the issue faced by the trial court on the competing motions for summary judgment.

## III. THE DECISION OF THE DISTRICT COURT

The district court found no violation of 12 C.F.R. § 202.9(a)(2). After recounting the basic facts leading up to the dispute, the judge wrote:

Based on these facts, the Court finds that no violation has occurred. The pleadings and depositions clearly show that, contrary to the plaintiffs assertions, the applications to Galles were withdrawn. Once the applictions were withdrawn, the defendants' obligations under the regulation ceased, and their failure to give notice does not violate the regulation.

---

[1]. For the limited purpose of this decision, we assume, without deciding, defendants' commission of adverse action. *See Jochum v. Pico Credit Corporation of Westbank, Inc.,* 730 F.2d 1041, 1044–48 (5th Cir.1984). We also assume 12 C.F.R. § 202.9(a)(1)(ii) does not contravene ECOA's statutory authorization.

The fact of withdrawal of the application is made clear by both the words and the conduct of the plaintiffs. Bruce Thompson's statement upon leaving Galles [2] indicates that the plaintiffs intended to withdraw the application. Counsel for plaintiffs argues that the statement was intended to be facetious, yet Thompson testified that the statement was made in anger or disgust. In either event, the Court believes that a creditor is entitled to rely on such statements. Written notice to the applicant in these circumstances would be meaningless.

Moreover, the conduct of the plaintiffs makes their intent to withdraw the application even more clear. By voiding the purchase order and retrieving their down payment, they manifested an intent to discontinue dealing with Galles. Their failure to provide the additional information requested by Galles shows the same intent. By shopping for other vehicles and ultimately purchasing a pickup from another dealership, the plaintiffs have indicated their intent and belief that the dealings with Galles be and were at an end. There is nothing in the record indicating anything but a withdrawal of the applications.

The purpose of the Equal Credit Opportunity Act is to eliminate discrimination in credit transactions on the basis of race, color, religion, national origin, sex, marital status or age. 15 U.S.C. § 1691(a). In this case, the empty gesture of a written notification in no way furthers this purpose where the applicants exhibit disinterest in pursuing the application.

Order of District Court, at 3–4.

## IV. THE ISSUES ON APPEAL

In their appellate brief, plaintiffs noted the absence of any applicable statute or regulation which denotes withdrawal as an exception to the written notice requirement.[3] Plaintiffs argue for strict application of the language of the regulations. There is no occasion, they contend, for the agglutination of judicially-created exceptions to the regulatory scheme.

■ As an academic exercise, this argument has some appeal. The ECOA "sets forth certain notification requirements a creditor must satisfy to be in compliance with the Act. If a creditor fails to satisfy these requirements, he is in violation of the ECOA, regardless of whether he engaged in any prohibited discriminatory action." [4] *Sayers v. General Motors Acceptance Corporation*, 522 F.Supp. 835, 840 (W.D.Mo., 1981).

Moreover, the 1986 version of Regulation B contemplates written notification even for incomplete applications. The regulation now contains the following directive on creditors' treatment of incomplete applications:

*Oral request for information.* At its option, a creditor may inform the applicant orally of the need for additionl information; but if the application remains incomplete the creditor shall send a [written] notice in accordance with paragraph (c)(1) of this section.

12 C.F.R. § 202.9(c)(3) (1986).

*Sayers* and the current version of § 202.9(c)(3) are persuasive authority for the proposition that, in an appropriate case, the ECOA and Regulation B are not amenable to flexible judicial construction. However, the instant lawsuit is not such an appropriate case. Law cannot be analyzed in a vacuum. Rather, legal scrutiny must make constant reference to the factual bases which breathe life into the legal issues. The facts of this case undeniably demon-

---

**2.** Plaintiff Thompson admits he could have said something akin to "By Gosh, if you are going to deny me credit, I've got enough cash to do it. Who do you think you are?" Thompson deposition at 68.

**3.** 12 C.F.R. § 202.9(d) (now 12 C.F.R. § 202.9(e)) is inapplicable here.

**4.** Plaintiffs' briefs contain subsidiary suggestions that the denial of credit may have been discriminatorily motivated. *See, e.g.,* Brief for Appellants at 24, n. 15. We do not find support for any such claim in the record. Therefore, those innuendoes will not be considered.

strate plaintiffs' rescission of their Galles purchase order. Having exhibited a complete disinclination to obtain a vehicle from Galles as of and after May 28, 1980, we can only conclude plaintiffs had no further use for their credit application. Plaintiffs themselves state aphoristically, "[c]redit, after all, is merely a means to an end, which in this case was a motor vehicle that eventually was purchased." Plaintiffs' Brief on Appeal at 19. Having abandoned their "end" of buying a Galles' truck, plaintiffs must necessarily have also revoked the "means," namely the financing credit application, chosen to accomplish that end.

Plaintiffs refute the obvious implications of their behavior by arguing that although they cancelled their purchase order, they did not withdraw the credit application because the cancellation occurred after the "credit aspect of the transaction was terminated." Plaintiffs' Brief on Appeal at 16. The argument states defendants terminated the credit application, rather than that plaintiffs withdrew it.

This argument belies the facts. As noted above, plaintiffs supplied the necessary credit information to GMAC two weeks later. Thus, on May 28, 1980, plaintiffs did not even bother to ascertain if they were indeed actually unable to produce the necessary information. On the contrary, they simply did not feel they should have to produce it. Forney-Thompson deposition at 24, 30–31. In their own opinion they had more than sufficient assets to purchase the truck, and so a problem with their credit application was unthinkable. *See* Thompson deposition at 71. Plaintiffs were not "going to beg for him [Galles' agent] to lend me money," Forney-Thompson deposition at 71.

Clearly, there was some give and take at the May 28, 1980 meeting between plaintiffs and Galles. Plaintiffs' indignation and incredulousness at not enjoying instant credit approval certainly cannot be ignored as a major ingredient in the cessation of plaintiff's dealings with Galles. *See* Plaintiffs' Brief on Appeal at 5 ("[c]onsumers and the credit manager exchanged words at that point"). Thus this portion of plaintiffs' argument is naive.

The trial court's order, however, cannot be affirmed on the basis of any possible withdrawal. As plaintiffs have noted, there was no causal relationship between their purported withdrawal and GMAC's failure to send a written notice confirming an end to consideration of the credit application because GMAC's credit checks were conducted independently of the sales made by franchised General Motors dealerships. GMAC was admittedly unaware of the purported withdrawal. GMAC's Answer Brief at 17. Thus, even if a withdrawal did occur on May 28, 1980, it did not excuse the lack of written notification.

The specific predicate for the district court's holding, namely withdrawal of the application, therefore is not supported by the nature of the relationship between Galles and GMAC. Nevertheless, the equitable basis for the district court's opinion is substantiated by our own consideration of the record, the applicable legal issues, and common sense. The district court recognized the importance of plaintiffs' submission of another credit application to GMAC, albeit through a different dealership, two weeks after the episode with Galles. We find this fact to be dispositive of the appeal.[5]

The GMAC office in Albuquerque is the control branch for GMAC in New Mexico and in parts of Texas and Arizona. Morton Deposition at 4. GMAC is a wholly-owned subsidiary of General Motors Corporation. It exists for the sole purpose of servicing retail and wholesale business from General Motors dealers. *Id.* at 4–5. The Albuquerque office of the GMAC processed plaintiffs' May 27, 1980 application and informed Galles of the application's deficien-

---

**5.** "[A]n appellate court may affirm a district court judgment on a basis not relied on by the district court if supported by the record and the law." *Reynolds v. United States,* 643 F.2d 707, 710 (10th Cir.1981), *cert. denied,* 454 U.S. 817, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981).

cy. When the GMAC office did not receive a response from Galles, the plaintiffs' file was placed in a ten day suspension. Because of the Memorial Day holiday, the file was not placed in suspension until the first or second day of June, 1980. This meant that in due course the file would have been pulled for review on the tenth or eleventh of June. *Id.* at 24–27.

However, before the tenth or eleventh was ever reached, the Albuquerque GMAC office received plaintiffs' second credit application, this time executed through another area General Motors dealer. The second application was received by GMAC on June 6, 1980. It was approved on the seventh or eighth. As part of the approval process on the second application, GMAC ran a credit bureau record check. This check unearthed the May 27, 1980 application. The May 27 file was xeroxed, and a copy was inserted in the June 6 file. *Id.* at 25–28. No letter was sent to plaintiffs regarding the May 27 application, because GMAC granted credit to plaintiffs on the June 6 application. *Id.* at 14–15, 28. The June 6 application was granted because in that document plaintiff Forney-Thompson included the account number which had been missing from the May 27 application. *Id.* at 35–36.

The manner in which GMAC melded the two applications resulted in the effective treatment of the second application as a mere completed version of the first application. Therefore, once GMAC approved the second application, notification under the first application became superfluous. This treatment of plaintiffs' applications coincided, somewhat fortuitously, with plaintiffs' own intentions. Plaintiffs clearly desired to purchase only a single truck.[6] Thus GMAC's combined consideration of the two applications matched the purchase transaction which actually transpired.

If, on the other hand, plaintiffs had purchased two separate trucks, *i.e.*, one from each of the two dealers, then GMAC's combined consideration of the two applications would have run afoul of plaintiffs' credit needs. Under such a scenario, GMAC probably would have had to provide separate written notice for resolution of each of the two separate credit applications. However, we need not rule on that issue, because the facts of this case do not present such a situation. Plaintiffs' Reply Brief argument is therefore misplaced.

As the district court noted, strict adherence to the letter of Regulation B in the context posed by the particular facts and circumstantial peculiarities of this case would do nothing to advance the basic purposes of ECOA. To the contrary, upholding plaintiffs' position would require us to step beyond the reasonable boundaries of the obligations ECOA and Regulation B place on creditors. We must not blindly apply the regulatory scheme so as to ignore reason. *Compare Jochum v. Pico Credit Corporation of Westbank, Inc.*, 730 F.2d 1041, 1047 (5th Cir.1984) ("a regulation should be interpreted in a manner that effectuates its central purposes"); *Brothers v. First Leasing*, 724 F.2d 789, 793 (9th Cir.1984), *cert. denied*, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984) (literal language of the ECOA must be construed so as to effectuate its underlying purposes).

This conclusion finds strong support in 12 C.F.R. § 202.9(f) (1986), which states: "When an application involves more than one applicant, notification need only be given to one of them, but must be given to the primary applicant where one is readily apparent." Plaintiffs filed two credit applications with the same entity, GMAC,[7] for the purchase of a single Chevrolet pickup truck. Therefore, by way of analogy, GMAC need only have given notice on one application, at least where, as here, the result of the two applications was the granting of credit on the purchase of the one truck. Plaintiffs were properly and

---

6. This fact is amply evidenced by plaintiffs' cancellation of the Galles purchase order.

7. The credit forms from both dealerships indicate submission to GMAC.

timely notified [8] that their credit application for the purchase of the truck had been granted, and so the underlying purpose of the ECOA had been fulfilled.

We recognize and agree with plaintiffs' broad-based argument that judicially-created exceptions could well tip the ECOA scales in a manner unintended by Congress and the Federal Reserve Board. Such a danger, however, is not presented by these facts. The equivalent danger we avert is the questionable pleasure of a procrustean bed suggested by plaintiffs' expansive literalism.

The judgment of the district court is AFFIRMED.

8. *See* 12 C.F.R. § 202.9(a)(1)(ii). Notification on the second application was made within thirty days of the filing of the first application.