**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Cruz CORRAL, Defendant–Appellant.**

**No. 91–2195.**

United States Court of Appeals,
Tenth Circuit.

July 17, 1992.

---

Marcia J. Milner, Albuquerque, N.M., for defendant-appellant.

James D. Tierney, Asst. U.S. Atty. (Don J. Svet, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before LOGAN, ANDERSON, Circuit Judges, and THEIS, District Judge.*

THEIS, Senior District Judge.

Defendant–Appellant Cruz Corral, convicted of conspiracy to distribute cocaine and possession with intent to distribute cocaine, appeals the district court's denial of her motion to suppress incriminating evidence obtained from her residence and a vehicle that she occupied. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I

Cruz Corral walked into a Village Inn restaurant close to her home on the morning of October 11, 1990 to meet with Stanley Gloria and James Torres. Unbeknownst to her, Gloria and Torres were narcotics detectives from the Albuquerque Police Department (APD) posing as major out-of-town narcotics traffickers. Corral agreed to supply one kilogram of cocaine for the price of $23,000. She inspected the money, and arranged to make the exchange in a nearby K–Mart parking lot.

While Corral was at the meeting, the APD police officers, who were surveilling her residence, observed Jose Alvarez arrive at Corral's residence in a Nissan pick-up truck. They had noticed an unusually high volume of visitors making brief stops at the residence.

After concluding her Village Inn meeting, Corral returned to her residence. She changed out of her blue jeans into a dress

* Honorable Frank G. Theis, Senior United States District Judge for the District of Kansas, sitting by designation.

and then left with Alvarez for the K–Mart parking lot in the Nissan pick-up truck. Keeping constant surveillance on Corral and Alvarez, the police officers notified the undercover detectives, Gloria and Torres, that Corral had arrived at the parking lot. Detectives Gloria and Torres entered the parking lot and pulled alongside the Nissan truck. They then approached Corral, seated at the passenger side, and asked if she brought the cocaine. Corral pulled out a brick of cocaine from the waistband of her skirt. Detective Gloria made a small cut into the brick and saw a white substance. After he "observed that it was, in fact, cocaine," Detective Gloria asked Detective Torres to get the money from the trunk of their vehicle. Alvarez followed Torres to the trunk of the undercover vehicle. As Torres was about to hand the money over to Alvarez, they observed a marked APD patrol car approaching their site. Torres immediately slammed shut the trunk lid and yelled "Police." Detective Gloria told Corral that he would finish the deal later, and both vehicles hurriedly left the parking lot. By radio communication, Gloria and Torres informed the surveillance team that they had personally observed a kilogram of cocaine in Corral's possession.

After a brief interval, Corral and Alvarez were observed reentering the K–Mart parking lot, driving slowly as though looking for somebody. Detective Griego, whose patrol car had earlier interrupted the drug transaction, decided to conduct an investigatory stop of the Nissan pick-up truck, and summoned additional police units. As a uniformed APD officer stopped the pick-up truck, Detective Griego, who was parked behind the truck, observed Corral fumbling with her clothing and placing something behind the passenger seat. Detective Griego approached the passenger side of the truck. Corral had been removed from the truck and the passenger door was left ajar. Standing a foot away from the open door, Detective Griego saw a taped package resembling a brick of cocaine behind the passenger seat. Corral,

however, disputes the officer's testimony that the taped package lay in plain view, asserting that the package was obstructed from view by the passenger seat.

Corral was detained and the vehicle was secured and towed to an APD facility. According to the government, the APD officers, after obtaining a search warrant, searched the vehicle and the taped package, and found a kilogram of cocaine in the package. Corral, however, contends that the search of the vehicle had occurred prior to the execution of the search warrant.

Pursuant to the same search warrant, the officers later searched Corral's residence and found a half kilogram of cocaine, over $18,000 in cash, and numerous documents and personal property linking the residence to Corral. Corral was arrested several days later. Corral was subsequently tried and convicted of conspiracy to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 846; and possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).[1]

In denying Corral's motion to suppress, the district court ruled that the search of the pick-up truck was lawful because the package lay in plain view and that, alternatively, the officers possessed probable cause to arrest Corral and to conduct a concomitant search of the vehicle. The district court also upheld the search of Corral's residence on the ground that the search warrant was supported by probable cause.

## II

Corral first challenges the search and seizure of the taped package containing one kilogram of cocaine that was discovered in the Nissan truck. She asserts that the search could not be supported by the plain view exception to the warrant requirement because the package was not in plain view and, alternatively, because the officers were not lawfully located in the

---

**1.** Jose Alvarez was originally a co-defendant in the case but was severed before the completion of the trial.

place from which the package could be seen, and the package was not apparently incriminating on its face. The government, on the other hand, contends that the search need not be justified as a plain view search because it was executed pursuant to a valid search warrant.[2]

We address, at the outset, the appellant's contention that the government failed to meet its burden of proof because it did not present during the suppression hearing the particular APD officers "who could best explain why they seized the package." She claims that Detective Barela, the government's principal witness in the suppression hearing, had no first-hand knowledge of what Detective Griego could see when he approached the Nissan truck or whether the officers who stopped the truck possessed the requisite reasonable suspicion to conduct an investigatory stop. Because the government "chose to call a witness who knew very little about the stop," argues the appellant, the government has failed to establish a plain view search.

■ As a reviewing court, we are not confined simply to the evidence adduced during the suppression hearing. In evaluating the correctness of the district court's rulings, the appellate court may consider the entire record developed from the trial even though such evidence may not have been presented during the suppression hearing. *United States v. Rios*, 611 F.2d 1335, 1344 n. 14 (10th Cir.1979), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3054, 69 L.Ed.2d 422 (1981). Here, although Barela's testimony arguably may not supply the basis for the plain view search, subsequent evidence produced at trial may support such a theory. At trial, Detective Griego himself took the stand and testified that he saw the package in plain view. As such, the government's failure to produce the most appropriate witness in the pre-trial

hearing does not by itself necessarily mandate reversing the district court's decision.

■ Examining the entire record, we now address the district court's ruling that the seizure of the cocaine from the vehicle was supported by the plain view doctrine. Questions of law, including legal determinations of reasonableness in Fourth Amendment issues, are reviewed de novo. *United States v. Morgan*, 936 F.2d 1561, 1565–66 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992).

■ It is a well established legal principle that "under certain circumstances the police may seize evidence in plain view without a warrant." *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). A plain view seizure of incriminating evidence is sustainable if (1) the item is indeed in plain view; (2) the police officer is lawfully located in a place from which the item can plainly be seen; (3) the officer has a lawful right of access to the item itself; and (4) it is immediately apparent that the seized item is incriminating on its face. *See Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990).

Appellant challenges the plain view seizure of the cocaine package on the grounds that the package was not in plain view; that the officers who stopped the vehicle lacked reasonable suspicion to conduct an investigatory stop; and that the package was not incriminating on its face.

■ In sustaining the seizure on plain view grounds, the district court necessarily rejected the appellant's assertion that the cocaine package was hidden from view, and accepted instead Detective Barela's testimony that Detective Griego was able to observe the package while standing outside

---

**2.** The district court did not make a factual finding as to whether the warrant was secured before or after the search of the vehicle. Despite the appellant's assertions, we do not view the district court's silence on the warrant question as an implicit determination that the search of the vehicle was conducted without a warrant. We surmise that the district court deemed it unnecessary to resolve this factual dispute be-

cause, in its opinion, there was overwhelming evidence that the search was justified under the plain view doctrine even if no warrant was obtained at the time of the search. Since the district court did not make any factual determinations on this issue, we assume merely for the purpose of our analysis that the search of the vehicle was a warrantless search.

the vehicle, looking in through its open door. We are mindful that a district court's factual findings are subject to a highly deferential standard of review and must be accepted by the appellate court unless "clearly erroneous." *E.g. United States v. McAlpine,* 919 F.2d 1461, 1463 (10th Cir.1990). "[T]he credibility of witnesses and the weight to be given the evidence, together with inferences, deductions, and conclusions fairly and reasonably to be drawn from the evidence," are matters within the province of the trial court. *United States v. Donahue,* 442 F.2d 1315, 1316 (10th Cir.1971). Here, the record contains ample support for the district court's conclusion. Apart from the photo exhibit showing the package in full view, (Defendant's Exhibit B), Officer Griego himself testified at trial that he observed the package while looking in through the open passenger door. We conclude, therefore, that the district court's factual findings are supported by the record and are thus not clearly erroneous.

■ With respect to the appellant's argument that the initial intrusion—the investigatory stop—was unlawful, we find that assertion untenable. To justify an investigatory stop, the police need only possess "specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime." *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Morgan,* 936 F.2d at 1566 (citations omitted). Here, the record reveals that the APD officers were in constant communication in conducting the surveillance and investigation. Officer Griego, who ordered the investigatory stop, received a report that Detectives Gloria and Torres personally witnessed a brick of cocaine in appellant's possession. Earlier, as his marked patrol car approached the scene of the drug transaction, Detective Griego observed Alvarez and Detective Torres slamming shut the trunk and hurriedly leaving the scene. Detective Griego also observed the Nissan vehicle reentering the

parking lot and moving suspiciously as though looking for someone. The record indicates unequivocally that Detective Griego had reasonable suspicion to order an investigatory stop of the vehicle; there was even, in fact, probable cause to make the stop. As such, the initial intrusion that brings the police within plain view of the package was lawful. In other words, the police did not violate the Fourth Amendment in arriving at the place from which the evidence could plainly be seen.

■ We also reject appellant's argument that the incriminating character of the taped package was not immediately apparent. The "immediately apparent" element was designed to prevent the plain view doctrine from being "used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Coolidge,* 403 U.S. at 465–66, 91 S.Ct. at 2038. In *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the Supreme Court upheld the plain view seizure of an opaque balloon that contained an illicit substance even though the contents were not visible. The Court stated that "the use of the word 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of the evidence is necessary for an application of the 'plain view' doctrine." *Id.* at 741, 103 S.Ct. at 1542. All that is required, explained the Court, is a "practical, nontechnical probability that incriminating evidence is involved." *Id.* at 742, 103 S.Ct. at 1543. Because the police officer, based on his participation in previous narcotics arrests and discussions with other officers, possessed probable cause to believe that the balloon contained an illicit substance, the *Brown* Court held that the "immediately apparent" requirement was satisfied.[3] *Id.* As *Brown* makes clear, then, "contraband need not be visible in order for a plain view seizure to be justified." *Id.* 460 U.S.

---

**3.** Although *Brown* was a plurality opinion, this portion of the decision commanded a clear majority.

at 747, 103 S.Ct. at 1546 (Stevens, J., concurring).

Under the facts at hand, Detective Griego possessed probable cause to associate the taped package with criminal activity. He had information from fellow police officers that the appellant possessed a package of cocaine.[4] He also personally observed the appellant fumbling with her dress and tossing an object behind her seat in a suspicious manner. As a veteran police officer experienced in narcotics cases, when Detective Griego saw the taped package in the Nissan vehicle, he had probable cause to believe that the package contained cocaine. Thus, although the package was opaque and its contents not readily visible, the incriminating character of the package was immediately apparent. The seizure of the package was thus justified under the plain view doctrine.

 Having upheld the warrantless seizure of the cocaine package, we also conclude that the warrantless search of the package was lawful. In *United States v. Donnes,* 947 F.2d 1430, 1436 (10th Cir. 1991), we held that the warrantless search of a closed, opaque camera case could not be justified as a plain view search. There, we assumed without deciding that the warrantless seizure of the container was valid under the plain view doctrine but held that the police subsequently violated the Fourth Amendment by opening the container and examining its contents without a search warrant. We reasoned that although "[p]robable cause to believe that contraband is stored in a container will justify a warrantless seizure" of the object, the closed, opaque container did not subject its contents to plain view, and the police consequently could not search the container absent a warrant. *Id.* at 1436–39. In cases involving closed containers, therefore, the plain view doctrine may support the warrantless *seizure* of a container believed to contain contraband but any subsequent *search* of the concealed contents of the container must be accompanied by a war-

rant or justified by one of the exceptions to the warrant requirement. *See Brown,* 460 U.S. at 749–51, 103 S.Ct. at 1547–48 (Stevens, J., concurring) (plain view doctrine supports the warrantless seizure of a closed container but not the warrantless search of its contents, which were not visible to the police). *See also Horton,* 110 S.Ct. at 2310 n. 11 (the seizure of a container in plain view "does not compromise the interest in preserving the privacy of its contents because it may only be opened pursuant to a search warrant or one of the well delineated exceptions to the warrant requirement.").

 However, where the contents of a seized container are a foregone conclusion, this prohibition against warrantless searches of containers under the plain view doctrine does not apply. We have held that when a container is " 'not closed,' or 'transparent,' or when its 'distinctive configuration ... proclaims its contents,' the container supports no reasonable expectation of privacy and the contents can be said to be in plain view." *Donnes,* 947 F.2d at 1427 (citations omitted). *See also United States v. Eschweiler,* 745 F.2d 435, 440 (7th Cir. 1984) (police may open envelope that clearly contained key) *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1188, 84 L.Ed.2d 334 (1985); *United States v. Morgan,* 744 F.2d 1215, 1222 (6th Cir.1984) (police may open bottle without a warrant where label on bottle made it apparent that the bottle contained contraband). Similarly, where the police have already seen the contents of a seized container prior to conducting the search, there is no significant additional invasion of privacy involved in searching the container. Searches compromise the individual interest in privacy, and the prohibition against unreasonable searches "serves primarily as a protection against unjustified intrusions on privacy." *Horton,* 110 S.Ct. at 2310. However, where the police already possess knowledge approaching certainty as to the contents of the container, the search of the container does not unreasonably infringe

---

**4.** Although Detective Griego himself possessed no first-hand knowledge of the package, it is well established that the police may "pool their information" to establish probable cause. *United States v. Espinosa,* 771 F.2d 1382, 1407 (10th Cir.1985).

upon the individual interest in preserving the privacy of those contents. *See Brown,* 460 U.S. at 751 n. 5, 103 S.Ct. at 1548 n. 5 (Stevens, J., concurring) ("[I]n evaluating whether a person's privacy interests are infringed, 'virtual certainty' is a more meaningful indicator than visibility.").

Unlike *Donnes,* in which the police never saw the contents of the innocuous-looking camera case or had any certainty as to its contents, the police in the present case already knew to a virtual certainty that the package contained cocaine. Detective Gloria had previously examined the contents of the package by making a slit into the package, and confirmed that the package contained cocaine. The slit on the exterior of the package and the uninterrupted police surveillance of the Nissan truck ensured that the seized package was the same one observed by Detective Gloria. Thus, the officers here possessed a degree of certainty as to the contents of the package that is equivalent to the plain view of the cocaine itself. Because there was virtual certainty that the package contained cocaine, we hold that the plain view doctrine supports the search as well as the seizure of the cocaine package even though the cocaine was not readily visible to the police. *See id.* 460 U.S. at 750–51, 103 S.Ct. at 1548 (Stevens, J., concurring) (warrantless search of opaque balloon is valid under the plain view doctrine if there was virtual certainty that the balloon contained a controlled substance).

 Aside from the plain view justification, we affirm the district court's ruling on an independent theory: the warrantless search of the cocaine package located in the Nissan truck is supported by the automobile exception.[5] In *California v. Acevedo,* —— U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), a decision not available to the trial court at the time of the hearing, the Supreme Court held that "[t]he police may search an automobile and the containers within it where they have probable

cause to believe contraband or evidence is contained." *Id.* 111 S.Ct. at 1991. The scope of a warrantless search of an automobile is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id.* (citing *United States v. Ross,* 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982)). If, for example, the police have probable cause to believe that contraband is located in a specific container located within the automobile, they are authorized under *Acevedo* to search the container, although not the entire vehicle, without awaiting a search warrant. *Id.*

Here, the police possessed probable cause to believe that the taped package found behind the front passenger seat of the Nissan truck contained cocaine. Under *Acevedo,* therefore, the police may search the package without securing a warrant. The warrantless search of the package, thus, comports with the Fourth Amendment, and the district court properly denied the appellant's suppression motion.

### III

The appellant next challenges the propriety of the search of her residence, claiming that the information contained in the affidavit was insufficient to support the issuance of a search warrant. Specifically, she argues that the affidavit relied on information provided by an undisclosed third party and that the remaining information in the affidavit does not establish probable cause to believe that the cocaine would be located in her residence.

 In evaluating claims of warrant deficiencies, we need only determine whether the issuing magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (citations omitted); *United States v. Harris,* 903 F.2d 770, 774 (10th

---

**5.** Although the district court did not base its ruling on the automobile exception, we may affirm a judgment on a basis not relied upon by the lower court if supported by the record and the law. *Reynolds v. United States,* 643 F.2d 707, 710 (10th Cir.), *cert. denied,* 454 U.S. 817, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981); *Thompson v. Galles Chevrolet Co.,* 807 F.2d 163, 167 (10th Cir.1986).

Cir.1990). Probable cause, in turn, is measured by a "totality of the circumstances" standard under which the magistrate makes a "practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332 (citations omitted); *United States v. Shomo*, 786 F.2d 981, 983 (10th Cir.1986).

The affidavit in question, supplied by Detective Barela, recited that a reliable confidential informant received information that a large amount of cocaine was being stored and distributed at the appellant's residence. The affidavit also described the police surveillance of the appellant's residence and the drug transaction between the appellant and the undercover detectives. Finally, the affiant stated his belief that cocaine was stored in the residence because the appellant had to return to her residence before meeting the undercover officers at the K–Mart parking lot to make the drug transaction, and because, in his experience, persons capable of distributing cocaine by the kilogram often maintain more cocaine or other controlled substances within their residence.

■■■■ The appellant first contends that the hearsay information obtained by the informant from an undisclosed source bears insufficient indicia of reliability to be accorded any weight in evaluating probable cause because the affidavit "says nothing about who the third party is, his reliability or lack thereof or how he obtained his knowledge." (Appellant's Brief-in-Chief, at 15.) In determining the value of an informant's report in establishing probable cause, the magistrate should assess the informant's veracity or reliability and basis of knowledge in light of the totality of the circumstances. *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328; *United States v. Fixen*, 780 F.2d 1434, 1436 (9th Cir.1986). Veracity and basis of knowledge are not, however, rigid and immovable requirements in the finding of probable cause. A deficiency in one element may be compensated for "by a strong showing as to the other, or by some other indicia of reliability." *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329. Although an informant's first-hand observations would generally be entitled to greater weight, hearsay reports are not necessarily fatal to the warrant. There is, moreover, no absolute requirement that law enforcement agents inquire into the source of the informant's information. *United States v. McNeal*, 955 F.2d 1067, 1078 n. 9 (6th Cir. 1992). All that is required to support probable cause is that enough information—beyond the mere conclusions of the affiant—be presented to the magistrate "to enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process." *Gates*, 462 U.S. at 230 n. 6, 103 S.Ct. at 2328 n. 6 (citations omitted).

■■■■ Here, the affidavit declares that the confidential informant had proven reliable in the past: he previously supplied the police with information resulting in the successful seizure of large amounts of narcotics and over $200,000 in U.S. currency as well as the arrests of the individuals involved. The affiant also attested to the informant's good motives in supplying the information. The informant's report was corroborated by police investigation and surveillance, which revealed that the appellant had previously been arrested for cocaine trafficking, and which showed an unusually high volume of visitors briefly entering and leaving her residence, consistent with drug trafficking. Based on the circumstances, we hold that the informant's report coupled with police corroboration are sufficient to establish probable cause for the issuance of the warrant. *See Gates*, 462 U.S. at 233, 103 S.Ct. at 2329 ("If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause.").

■ The appellant's second argument is that the affidavit's recitations of the drug transaction and police surveillance are relevant only for showing probable cause that the appellant intended to sell cocaine that day but not to establish probable cause to believe that cocaine was stored in her residence. We disagree. That the appellant had to return to her residence after negotiating the purchase price of the cocaine but before making the actual exchange provides at least a reasonable probability that the cocaine was stored at her residence. *See Shomo,* 786 F.2d at 984 (warrant authorizing search for revolver in appellant's residence was valid because the affidavit provided "at least a reasonable probability" that revolver was kept in his house even though the possibility existed that appellant kept his revolver elsewhere.); *see also United States v. Gant,* 759 F.2d 484, 488 (5th Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985) ("[T]he nexus between the place to be searched and the evidence sought may be established through normal inferences about the location of evidence."). Although, as the appellant suggests, the cocaine may have come from Alvarez, and may have been stored in the Nissan truck and not the appellant's home, the magistrate is "not required to rule out every other possible alternative." *Shomo,* 786 F.2d at 984. *See also United States v. Thomas,* 757 F.2d 1359, 1367 (2d Cir.), *cert. denied sub nom. Fisher v. United States,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985) ("Probable cause to believe certain items will be found in a specific location is a 'practical, nontechnical conception,' [citations omitted] that need not be based on direct, first-hand, or 'hard' evidence."). Under the circumstances presented in the affidavit, we conclude that the magistrate had a substantial basis for concluding that cocaine was located in the appellant's residence.

Accordingly, the district court's denial of the appellant's motion to suppress evidence found in her residence and the Nissan truck is AFFIRMED.