**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 5 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

vs.

WILLIAM HENRY MYERS,

     Defendant - Appellant.

No. 96-3105

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 94-20013-01)

Kim Martin Fowler, Assistant U.S. Attorney, Office of the United States Attorney, Kansas City, Kansas, for Plaintiff - Appellee.

Michael Lewis Harris, Office of the Federal Public Defender, Kansas City, Kansas, for Defendant - Appellant.

Before EBEL, Circuit Judge, WHITE,[*] Associate Justice (Ret.), and KELLY, Circuit Judge.

KELLY, Circuit Judge.

---

[*] The Honorable Byron R. White, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. § 294(a).

Defendant William Henry Myers appeals the district court's denial of his motion to suppress evidence. Defendant entered a conditional plea of guilty to possession with intent to distribute more than 100 but less than 1,000 marijuana plants, 21 U.S.C. § 841(a)(1). See Fed. R. Crim. P. 11(a)(2). He also appeals the court's imposition of the minimum mandatory sentence under 21 U.S.C. § 841(b)(1)(B). Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm.

Background

In October 1993, the Kansas Bureau of Investigation (KBI) received information from the Riley County Police Department that Mr. Myers was maintaining an indoor marijuana growing operation. The county police had received the information from the subjects of two separate investigations. One of them provided Mr. Myers's home address and phone number.

KBI agents confirmed that Mr. Myers lived at the address provided by the informant. They further observed that Mr. Myers's attic windows were covered with a black opaque material, and that the snow from a recent snowfall had melted from Mr. Myers's roof, while the snow remained on the roofs of surrounding residences. A check of Mr. Myers's utility accounts revealed that Mr. Myers's electricity and water usage was unusually high between December 1993 and February 1994, both in comparison to the previous year's amounts at the same residence, and to a nearby house of comparable size.

For example, Mr. Myers used 2,340 kilowatt hours and 25,500 gallons of water in January 1994--more than double the amount of electricity and five times the amount of water used by the house next door during that month. The KBI's investigation also revealed that Mr. Myers had used unissued social security numbers for his telephone and utility accounts. Finally, KBI agents discovered that Mr. Myers had prior convictions for burglary and theft, and cocaine trafficking. They also discovered that, as a juvenile, Mr. Myers had been involved in the fire bombing of a jail or police vehicle and had been convicted of possession of an unregistered firearm and possession of a fire bomb.

On the basis of this information, the KBI obtained a warrant to search Mr. Myers's residence. The KBI also received permission to conduct a night-time search, reasoning that it would enhance officer safety because the house was surrounded by a substantial open area. The KBI agents also noted that safety was a concern because of Mr. Myers's criminal history, and because manufacturers and distributors of narcotics often maintain firearms to protect themselves and their operations.

On March 9, 1994, at approximately 6:09 a.m., agents of the KBI, dressed completely in black and wielding automatic machine guns, knocked on Mr. Myers's front door and announced that they had a search warrant. The agents waited ten seconds, then battered down the door and rolled a Deftec Model 25 Distraction Device, also known as a "flash-bang," into the living room. The device exploded, and the agents then stormed the house, finding Mr. Myers, his wife, nineteen-year-old stepson, nine-year-old

stepdaughter, and seventeen-month-old daughter.

After subduing Mr. Myers and his wife and children, the KBI conducted a search of the house, which revealed a substantial marijuana growing operation in the attic.

The district court sentenced Mr. Myers to the statutory minimum 60 months, 21 U.S.C. § 841(b)(1)(B), holding that it was within its discretion not to apply the "safety valve" provision contained in 18 U.S.C. § 3553(f), which allows a departure from the statutory minimum if the defendant meets certain criteria.

## Discussion

### A.  Fourth Amendment Claims

We review the district court's factual findings for clear error; however, the reasonableness of a search and seizure under the Fourth Amendment is a question of law which we review de novo.  United States v. Hernandez, 93 F.3d 1493, 1498 (10th Cir. 1996).  "To assess the validity of a search warrant under the Fourth  Amendment, we review whether the totality of the circumstances in the affidavit  provided . . . a substantial basis for finding a fair probability that contraband or other evidence of a crime would be found at the searched premises."  United States v. McCarty, 82 F.3d 943, 947 (10th Cir.) (quotations omitted), cert. denied, 117 S. Ct. 257 (1996).

Mr. Myers first claims that the search warrant was not supported by probable cause because the informants did not provide the basis for their knowledge, and the independent

police investigation was insufficient to corroborate the informants' tips. We disagree. In United States v. Corral, 970 F.2d 719 (10th Cir. 1992), we held that an informant's tip was sufficiently corroborated by a police investigation which showed that the defendant had previously been arrested for drug trafficking, and that the defendant had had an unusually high volume of visitors briefly entering and leaving her residence, consistent with drug trafficking. Id. at 727.

Similarly, here the police uncovered enough evidence to corroborate the informants' statements. Among other things, Mr. Myers's residence was consuming unusually high amounts of electricity and water, and, as in Corral, Mr. Myers had a criminal record showing a history of drug involvement. The investigation sufficiently corroborated the informants' statements, and thus the totality of the circumstances in the affidavit provided a substantial basis for finding a fair probability that an illegal growing operation would be found at Mr. Myers's residence.

Mr. Myers also argues that the information provided to the police was "stale," because there was a five-month gap between when the police received the tips and when the search warrant was obtained. However, the determination of whether information is stale depends on the nature of the crime and the length of criminal activity, not simply the number of days that have elapsed between the facts relied upon and the issuance of the warrant. United States v. Snow, 919 F.2d 1458, 1460 (10th Cir. 1990). We agree with the district court that Mr. Myers's drug activities were "ongoing and continuous," so that

the passage of time did not render the information stale.

Finally, Mr. Myers attacks the validity of the warrant, claiming that KBI agents manufactured the information in the warrant concerning one informant's tip, and that the affidavit failed to reveal that the informants were under arrest at the time they made statements to the police. We need not decide these issues, however, because the information gathered by the KBI is sufficient to establish probable cause even without the challenged tip. Franks v. Delaware, 438 U.S. 154, 156 (1978) (even if a court finds that some information is false, suppression is required only if the false or misleading information is necessary to a finding of probable cause); United States v. Knapp, 1 F.3d 1026, 1029 (10th Cir. 1993) (a knowing or reckless omission from a warrant application violates the Fourth Amendment only if the omitted material would vitiate probable cause).

Mr. Myers next claims that the KBI's method of executing the search warrant violated his Fourth Amendment right against an unreasonable search. He argues that the KBI failed to comply with the knock and announce requirement in violation of the Fourth Amendment. See Wilson v. Arkansas, 115 S. Ct. 1914, 1918 (1995). However, the agents who conducted the search testified that they knocked loudly on Mr. Myers's front door, and waited ten seconds before battering it down. Thus, the district court's conclusion that the police knocked and announced is supported by evidence and is not clearly erroneous.

Mr. Myers also challenges the agents' use of what he calls a "military-style assault." Pursuant to the warrant, the agents, dressed in black uniforms, conducted the search of Mr. Myers's residence in the early morning hours. The agents battered down the door and rolled a distraction device into the house, which exploded with a brilliant flash of light and a loud bang, the purpose of which is to distract and disorient any occupants in the vicinity of the entry.

In reviewing Mr. Myers's Fourth Amendment claim, we must determine whether the agents' actions were "objectively reasonable" in light of the facts and circumstances confronting them. Graham v. Connor, 490 U.S. 386, 397 (1989). The use of a "flash-bang" device in a house where innocent and unsuspecting children sleep gives us great pause. Certainly, we could not countenance the use of such a device as a routine matter. See Jenkins v. Wood, 81 F.3d 988, 996-98 (10th Cir. 1996) (Henry, J., concurring) (questioning the policies of the KBI in using "flash-bangs" and no-knock entries in the execution of a warrant). However, we also recognize that we must review the agents' actions from the perspective of reasonable agents on the scene, Graham, 490 U.S. at 396, who are legitimately concerned with not only doing their job but with their own safety. Although it might seem that the KBI's actions in this case come dangerously close to a Fourth Amendment violation, we cannot say that their actions were objectively unreasonable given the district court's factual findings. The district court found that the agents knew that Mr. Myers had a history of illegal drug trafficking, and had spent time in

federal prison for a fire bombing incident, although they were unsuccessful in learning of the details of the incident. The district court obviously credited police testimony that Mr. Myers's lengthy pattern of criminal activity--beginning with the fire bombing in 1971 and continuing until the cocaine conviction in 1988[1]--made them apprehensive. The district court also found that the agents knew that there was a fair probability that Mr. Myers's residence contained an illegal marijuana growing operation.

## B. Sentencing

Mr. Myers claims that the district court erred by imposing the statutory minimum of 60 months, see 21 U.S.C. § 841(b)(1)(B), rather than imposing a lesser sentence pursuant to the "safety valve" provision contained in 18 U.S.C. § 3553(f).[2] Section

---

[1] The police also had information that in 1988, Mr. Myers had told law enforcement agents that he had been involved with drugs for fifteen years.

[2] Notwithstanding any other provision of law, in the case of an offense under [21 U.S.C. § 841], the court shall impose a sentence pursuant to [the United States Sentencing Guidelines, 28 U.S.C. § 994] without regard to any statutory minimum sentence, if the court finds at sentencing . . . that--

      (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
      (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
      (3) the offense did not result in death or serious bodily injury to any person;
      (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. [§] 848; and
      (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning

3553(f) provides that the district court shall impose a sentence pursuant to the sentencing guidelines, <u>see</u> U.S.S.G. § 2D1.1, without regard to the statutory minimum, if the defendant meets five criteria. We review de novo the district court's interpretation of a statute or the sentencing guidelines. <u>United States v. Acosta-Olivas</u>, 71 F.3d 375, 377 (10th Cir. 1995).

The district court held that whether the safety valve provision should apply is a matter within its discretion, and declined to even address whether the defendant met the five criteria listed in § 3553(f). That holding is at odds with the plain language of the statute, which directs the court to disregard the statutory minimum if the defendant meets the five criteria: "[T]he court <u>shall</u> impose a sentence . . . without regard to any statutory minimum sentence . . . ." It is a basic canon of statutory construction that use of the word "shall" indicates a mandatory intent. Norman J. Singer, 1A <u>Sutherland Statutory Construction</u> § 25.04 (5th ed. 1992); <u>see also</u> <u>Association of Civilian Technicians v. Federal Labor Relations Auth.</u>, 22 F.3d 1150, 1153 (D.C. Cir. 1994) (noting that the word "shall" in a statute "generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive").

---

the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).

Regardless, we may affirm the judgment for reasons other than those relied upon by the district court, provided they are supported by the record. Medina v. City and County of Denver, 960 F.2d 1493, 1495 n.1 (10th Cir. 1992). The record is clear that Mr. Myers has not met section 5 of the safety valve provision, which required him to disclose "all information and evidence . . . concerning the offense . . . that [was] part of the same course of conduct or of a common scheme or plan." Section 5 is very broad, requiring disclosure of everything the defendant knows about his own actions and those who participated in the crime with him. See Acosta-Olivas, 71 F.3d at 378-79 (noting that section 5 has been termed the "tell all that you can tell" requirement). In this case, Mr. Myers related to the KBI all that he knew about his own actions, but refused to provide other information, such as who his buyers were or the names of others connected to his operation. Mr. Myers did not provide additional information apparently because he did not think it would be helpful to the government. However, section 5 requires disclosure "whether or not it is relevant or useful to the government's investigation." United States v. Shrestha, 86 F.3d 935, 939 (9th Cir. 1996); see also Acosta-Olivas, 71 F.3d at 379. The burden was on Mr. Myers to prove that he met the five criteria contained in § 3553(f). United States v. Verners, 1996 WL 742388, at *1 (10th Cir. Dec. 31, 1996). He failed to carry that burden.

AFFIRMED.