**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 11 1999**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

NINA KIRK and EUGENE KIRK,

      Plaintiffs-Appellees,

v.

JOHN WATKINS,

      Defendant-Appellant,

  and

CHRIS TROUSSEL; CITY OF
MCALESTER, a Political Sub-
Division; DISTRICT 18 NARCOTICS
TASK FORCE,

      Defendants.

No. 98-7052
(D.C. Nos. 97-CV-164-B &
97-CV-357B)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Defendant-appellant John Watkins appeals from the district court's order of summary judgment denying his claim of qualified immunity.  We reverse and remand with instructions to the district court to enter summary judgment in Watkins' favor on the basis of qualified immunity.

On August 19, 1996, Agent Chris Troussel of the District 18 Narcotics Task Force submitted an affidavit for search warrant to James Bland, a state district court judge in Pittsburg County, Oklahoma.  The affidavit sought a no-knock search warrant to search for drugs, drug paraphernalia and handguns at the residence of appellee Eugene Kirk.

In the affidavit, Troussel recited the following facts in support of the no-knock warrant.  Troussel stated that a confidential informant had seen approximately twelve long guns and four hand guns in Kirk's residence.  Kirk almost always kept at least one handgun on his person or within reach.  He had stated that if police came back into his house again, they would not leave the same way that they entered.  An informant had seen methamphetamine, scales, several small plastic baggies and several weapons including four handguns in

Kirk's residence. The affidavit also recited that Kirk had a reputation for violence and that he had a previous conviction for assault and battery with a deadly weapon.

Troussel had previously sought the assistance of the McAlester Police Department, Special Response Team (SRT) in serving the warrant. Appellant Watkins is a captain with the McAlester Police Department and commander of the SRT. The SRT began training in case they were needed to aid in the execution of the search warrant.

As part of the SRT's preparation, Watkins obtained aerial photographs and a floor plan of the Kirk residence. On May 30, 1996, the SRT laid out a floor plan of the Kirk residence in a high school gymnasium and practiced possible entry scenarios. The floor plan included placement of furniture. It was based on information provided by Troussel, who had gathered information from a prior warrant executed at the Kirk residence.

Although it had authorized the no-knock search warrant, the court specified that it be served during daylight hours. The area around the Kirk house offered the officers little cover from which to make a stealthy approach. It was decided that some sort of diversionary tactic would be necessary. Troussel ruled out tear gas, because he intended to conduct a search of the home after it was secured. Watkins determined that use of a distraction device would be appropriate.

The distraction device chosen was the Deftec No. 25, manufactured by Defense Technology of America. This device, known along with others of its kind as a "flashbang" device, produces a loud noise, white smoke and a brilliant white flash when ignited. The officers planned to deploy two of the devices, one in the Kirks' bedroom, and the other in their living room.

On the evening before the warrant was to be served, Watkins and SRT officers again practiced their entry into the Kirk residence in the gymnasium. The next morning at approximately six a.m., the SRT pulled into the driveway of the Kirk residence and drove to the east side of the house. Officers blasted the lock of the door to the residence. Meanwhile, Watkins went to the bedroom window with a flashbang device, cut the screen and threw the flashbang device through the window (breaking it) and into the bedroom.

Unbeknownst to Watkins, the Kirks had moved their bed from against the wall to a location beneath the window. The flashbang device landed on the bed and started a fire which burned the Kirks, who were lying nude on top of the bed.

I.

We previously ordered briefing concerning whether the order denying Watkins qualified immunity was immediately appealable. In Mitchell v. Forsyth, 472 U.S. 511 (1985), the Supreme Court held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an

-4-

appealable "'final decision'" within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." Id. at 530. Summary judgment determinations which "resolve a dispute concerning an abstract issue of law relating to qualified immunity" are immediately appealable, see Behrens v. Pelletier, 516 U.S. 299, 313 (1996) (quotation omitted), whereas orders which determine only that there is a genuine issue of fact remaining for trial concerning the qualified immunity issue are not, see Johnson v. Jones, 515 U.S. 304, 313 (1995).

The district court did not deny summary judgment in this case because disputed issues of fact remained on the qualified immunity issue. Rather, it addressed an abstract issue of law: whether Watkins' actions were objectively reasonable in light of clearly established law. The order denying summary judgment is therefore immediately appealable, and we have jurisdiction over this appeal.

## II.

We review the district court's grant of summary judgment de novo, applying the same standard as it applied. See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Where the summary judgment decision involves a qualified immunity defense, we review it somewhat differently than other summary judgment rulings. See Barney v. Pulsipher, 143 F.3d 1299, 1309 (10th Cir. 1998). "Once a defendant raises the defense, the plaintiff assumes the burden of (1) coming forward with sufficient facts to show that the defendant's conduct violated the law; and (2) demonstrating that the relevant law was clearly established when the alleged violation occurred." Id. (quotation omitted). If the plaintiff fails to demonstrate that a defendant's conduct violated the law, we need not reach the issue of whether the law was clearly established. See id.

We consider first, then, whether the Kirks have presented facts which show that their constitutional rights were violated. It is indisputable that the Kirks had a Fourth Amendment right not to be subjected to the use of excessive force by police officers. See, e.g., Tennessee v. Garner, 471 U.S. 1, 7-8 (1985). Since police officers may lawfully use some degree of force to fulfill their duties, however, this right was violated only if the force used was "objectively unreasonable." See Graham v. Connor, 490 U.S. 386, 396-99 (1989). Whether the force used in a particular case is objectively reasonable depends on the facts and circumstances of that case, including such factors as "the severity of the

crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

The use of a flashbang device is neither per se objectively reasonable nor unreasonable. The reasonableness of its use depends on the facts and circumstances of each case. In United States v. Myers, 106 F.3d 936 (10th Cir. 1997), for example, we analyzed the Graham factors as follows:

> The use of a "flashbang" device in a house where innocent and unsuspecting children sleep gives us great pause. Certainly, we could not countenance the use of such a device as a routine matter. However, we also recognize that we must review the agents' actions from the perspective of reasonable agents on the scene, who are legitimately concerned with not only doing their job but with their own safety. Although it might seem that the [Kansas Bureau of Investigation]'s actions in this case come dangerously close to a Fourth Amendment violation, we cannot say that their actions were objectively unreasonable given the district court's factual findings. The district court found that the agents knew that Mr. Myers had a history of illegal drug trafficking, and had spent time in federal prison for a fire bombing incident, although they were unsuccessful in learning of the details of the incident. The district court obviously credited police testimony that Mr. Myers's lengthy pattern of criminal activity – beginning with the fire bombing in 1971 and continuing until the cocaine conviction in 1988 – made them apprehensive.

Myers, 106 F.3d at 940 (citations and footnote omitted).

The circumstances justifying the use of a flashbang device in this case are similar to those in Myers. The agents had reason to believe that Eugene Kirk had a number of loaded firearms at his disposal, and that he had threatened to kill

-7-

officers if they entered his home again to serve a search warrant. Officers obviously ignore such threats at their own peril. Moreover, Kirk had a prior conviction for a violent weapons offense and a reputation for violence. Finally, the purpose of the warrant was to gather evidence of drug trafficking. Guns and drugs are a volatile combination. An officer executing a search warrant could reasonably have believed that use of a distraction device would be likely to lessen the possibility of injury by allowing police to subdue Kirk without further violence. [1]

That said, we note the caveats concerning the routine use of distraction devices expressed by the panel in the Myers case, and the concerns raised by Judge Henry in his concurring opinion in Jenkins v. Wood, 81 F.3d 988, 996-98 (10th Cir. 1996). If police were to adopt "commando-style tactics" as a standard operating procedure, they would run the risk of violating the Fourth Amendment. The dangers the officers believed they faced in this case, however, were no more routine than those we found sufficient to justify the use of a distraction device in Myers. We agree with the district court that the use of a flashbang device in this

---

[1]     These factors also justify the use of a no-knock warrant and the fact that the officers shot the lock off of the Kirks' door to gain entry.

case did not, in and of itself, constitute a violation of the Kirks' Fourth Amendment rights. [2]

The district court concluded, however, that even if use of the flashbang device was objectively reasonable, Watkins should be denied qualified immunity because he threw the flashbang device into the Kirks' bedroom without looking. The court found that "in spite of his training and the instructions for use of the flash bang device, Watkins blindly threw the flash bang device into the Plaintiffs' bedroom without knowing the location of the occupants. Further, Watkins was aware that the flash bang device could have an incendiary effect upon flammable objects." Appellant's App. Vol. III at 924.

These facts may be sufficient to show a violation of the Kirks' constitutional rights. At least one jurisdiction requires officers to detonate flashbang devices only after they have seen fully into a targeted room. See Langford v. Superior Court, 729 P.2d 822, 827 (Cal. 1987). Such a rule would be

_____

[2]    The record contains evidence that Eugene Kirk raised and litigated a Fourth Amendment claim nearly identical to the one he raises here in a state court suppression hearing. We presume that Kirk did not prevail at the suppression hearing: Watkins's docketing statement indicates that Kirk was subsequently convicted of the underlying offense. It is possible, therefore, that Eugene Kirk is collaterally estopped from bringing his Fourth Amendment claim by an adverse state court decision. See Dixon v. Richer, 922 F.2d 1456, 1459 (10th Cir. 1991) (recognizing possibility of collateral estoppel defense in similar circumstances but finding Colorado law requirements for collateral estoppel not met). We do not consider this defense, however, because appellant did not raise it.

consistent with our precautionary attitude toward the use of such devices.    See Myers , 106 F.3d at 940.

Even assuming that a constitutional violation was shown, however, we must also ask whether the law prohibiting Watkins' actions was "clearly established" on August 20, 1996.  Generally, to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."    Tonkovich v. Kansas Bd. of Regents   , 159 F.3d 504, 516 (10th Cir. 1998).  Watkins' training materials made reference to the        Langford case; however,  Langford  does not specifically address circumstances where the officer has information concerning the placement of furniture in the room where the flashbang is to be detonated.  Moreover,     Myers , which supports the result in Langford , was not published until after the actions complained of here.  Finally, we cannot say that   Langford  necessarily reflects a clearly established weight of authority.  See Commonwealth v. Garner   , 672 N.E.2d 510 (Mass. Sup. Ct. 1996) (holding that officers did not unreasonably execute warrant when officer broke window and dropped flash-bang device into bedroom in which four-year-old child was present, even though he failed to look inside bedroom first as required by

departmental policy).  We conclude that Watkins is entitled to qualified immunity, because his actions did not violate clearly established law. [3]

III.

The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED and REMANDED with instructions to enter summary judgment in favor of Officer Watkins on the basis of qualified immunity.

Entered for the Court

Stephen H. Anderson
Circuit Judge

---

[3] The Kirks assert, as an alternative basis for affirmance, that the commando-style raid on their house was entirely unnecessary because Watkins and the other officers knew that Eugene Kirk was due in court at nine a.m. that same day.  They contend that Watkins should have waited until Kirk had left the house to execute the warrant.

Officers are not obligated to pursue the least intrusive practicable means to conduct a search.   See Cady v. Dombrowski , 413 U.S. 433 (1973).  Officer Watkins had information that Eugene Kirk took the drugs with him whenever he left the residence.  It was not objectively unreasonable for him to conduct the raid at a time when he believed both Kirk and the drugs would be present at the residence.  The Kirks cite no authority for the proposition that an officer who has obtained a no-knock search warrant is required to wait until the defendant has left the residence before executing it.

-11-