**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 7, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

NOLAN EDWARD BRINLEE,

     Defendant-Appellant.

No. 04-5147

(D.C. No. 04-CR-43-K)
(N.D.Okla.)

**ORDER AND JUDGMENT** *

Before **BRISCOE, LUCERO,** and **MURPHY** , Circuit Judges.

Defendant Nolan Edward Brinlee was sentenced to two consecutive 60-month terms of imprisonment after entering a conditional plea of guilty to one count of drug trafficking, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii), and 860(a), and one count of knowingly possessing firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

On appeal he argues that the district court erred in denying his motion to suppress. We exercise jurisdiction under 28 U.S.C. § 1292 and affirm.[1]

## I.

On November 4, 2003, Officer Sherman Weaver of the Adair Police Department responded to a call regarding a domestic disturbance and found a car in a ditch with defendant Brinlee and Kim Rains standing nearby. Rains was visibly upset and was "walking around screaming, cursing, and throwing her arms up in the air with anger." Aplt. App. at 45. Officer Weaver placed Rains in handcuffs and put her in his patrol car for safety reasons and in order to calm her down.

After running a records check, Officer Weaver found that Brinlee had an outstanding felony warrant from Rogers County and placed him under arrest. Officer Weaver then asked Rains what happened. She informed him that when she arrived at Brinlee's residence to break up with him, he jumped into her car and would not get out. Rains explained that she was driving to the police department when Brinlee jumped out of the car, after which she pulled into the ditch to stop and check on him. Officer Weaver asked Rains for identification

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

and permission to search her car.  Rains consented and stated that she had some marijuana and a pipe in her purse.  Officer Weaver retrieved those items, then proceeded to search the rest of her car.

Rains later asked about her dog, which she indicated was at Brinlee's house.  She offered to tell Officer Weaver about "things" that were inside the house if he would let her retrieve her dog.  Id.  Officer Weaver told her that he could not promise anything, but that he would try to help her get the dog.  Rains then reported that there were drugs inside the house and later elaborated to Officer Albert McKee that Brinlee had been selling methamphetamine, marijuana, and two or three kinds of pills, including Lortab and Oxycontin, out of his house for several months.  She stated that Brinlee kept his drugs inside a safe in a bedroom closet and kept money inside a box in his desk drawer.  Rains insisted that Brinlee always had drugs at the house.

Officer McKee drove Rains to Brinlee's house in order to retrieve her dog.  She walked up to the door and called to the dog, entered for eight to ten seconds, and came out with the dog.  Sergeant Charles Smallwood, a deputy with the Mayes County Sheriff's Department then joined Officer McKee on the front porch, where they both observed a mounted surveillance camera.  The front door was open, so Officer McKee, Sergeant Smallwood and one other deputy conducted a security sweep for persons inside the house.  No one was inside, so

they left the house without seeing or seizing any evidence. Sergeant Smallwood spoke with Officer McKee about the information he had obtained from Rains, and then prepared an affidavit in support of a search warrant for Brinlee's residence.

Sergeant Smallwood's affidavit recounted the information Officer McKee provided from his interview with Rains. Specifically, the affidavit set forth the following information: (1) Rains stated that she had seen large amounts of marijuana, large amounts of prescription pills and methamphetamine inside of the residence; (2) Rains stated that defendant kept illegal narcotics inside a safe located in a bedroom closet; (3) Rains described the safe as being approximately three feet high and three feet wide; (4) Rains stated that defendant kept his money from drug dealing inside a cash box located in a desk drawer; (5) Rains stated that she used to live at the residence with defendant and had seen him deal narcotics on numerous occasions; (6) Rains stated that defendant always kept illegal narcotics on hand for sale; (7) Rains stated that she last saw narcotics at the defendant's house approximately two weeks earlier; and (8) Rains stated that defendant owed about $8,000 in narcotics debts.

Sergeant Smallwood mentioned in his affidavit that earlier in the day Rains had been in possession of a small amount of marijuana and a smoking pipe, for which she was cited. He further mentioned in the affidavit that Officer McKee had observed a large volume of traffic coming and going from Brinlee's residence

over the last six months, which Officer McKee believed was an indication of illegal drug activity. Sergeant Smallwood stated in his affidavit that the surveillance camera he had observed mounted on an exterior door of the house was similar to those he had seen at other locations of drug activity, and that drug dealers often use surveillance cameras to avoid detection. He also added that in his experience drug dealers often concealed evidence in their residences.

Not included in the affidavit, and the basis of Brinlee's appeal, were several facts, including: details about the exact nature of Rains' relationship with Brinlee; Rains' presence at Brinlee's house earlier in the day; her reason for being at the residence (i.e., to break up with Brinlee); Rains' driving into the ditch; Rains' emotional state when discovered by Officer Weaver; the police presence in the house while conducting a protective sweep; and Rains' offer of information about Brinlee in exchange for retrieving her dog from his house.

Sergeant Smallwood submitted the affidavit to a magistrate judge of the Mayes County District Court. The magistrate judge found probable cause and issued a search warrant. During the execution of the search warrant for Brinlee's residence, officers recovered firearms from a safe in a bedroom closet and from a dresser drawer a few feet away. Inside a lockbox on the bed within the same bedroom, officers found more than 50 grams of a substance containing methamphetamine.

Brinlee was charged in a three-count indictment, but ultimately pled guilty to two counts (Counts One and Three). Count One alleged that he knowingly possessed, with intent to distribute and within 1,000 feet of a public elementary school, 50 grams or more, but less than 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii), and 860(a). Count Three alleged that Brinlee knowingly possessed two firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Prior to his guilty plea, Brinlee moved to suppress all evidence seized during the execution of the search warrant at his residence because the affidavit supporting the search warrant omitted material information. The district court held a suppression hearing and denied the motion. Brinlee then entered a conditional guilty plea to Counts One and Three. The district court sentenced Brinlee to a 60-month term of imprisonment for each of the two counts and ordered that they run consecutively.

## II.

On appeal, Brinlee argues that the district court erred in denying his motion to suppress the physical evidence obtained in the search of his residence. Although the affidavits supporting the search warrant clearly established probable cause, Brinlee asserts officers intentionally omitted material information that

would have vitiated probable cause in violation of <u>Franks v. Delaware</u>, 438 U.S. 154, 155–56 (1978).  In particular, he asserts that Sergeant Smallwood omitted a number of facts regarding Kim Rains, as well as facts about the circumstances surrounding her furnishing the information.  Such omissions, according to Brinlee, were material and would have affected the magistrate judge's finding that there was probable cause to issue the warrant.

We review de novo the ultimate determination of reasonableness for a search or seizure under the Fourth Amendment.  <u>United States v. Campos</u>, 221 F.3d 1143, 1146 (10th Cir. 2000).  We review the reasonableness of a warrant to determine "whether the issuing magistrate . . . had a 'substantial basis' for finding probable cause," giving "great deference" to the issuing magistrate judge's decision.  <u>United States v. Cusumano</u>, 83 F.3d 1247, 1250 (10th Cir. 1996) (en banc) (citation omitted).  When reviewing a district court's denial of a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous, viewing the evidence in the light most favorable to the government.  <u>United States v. Bennett</u>, 329 F.3d 769, 773 (10th Cir. 2003).

It is a violation of the Fourth Amendment to "knowingly and intentionally, or with reckless disregard for the truth," include false statements in an affidavit filed in support of a search warrant.  <u>Franks</u>, 438 U.S. at 155.  Moreover, "[t]he standards of deliberate falsehood and reckless disregard set forth in <u>Franks</u> apply

to material omissions, as well as affirmative falsehoods." United States v. McKissick, 204 F.3d 1282, 1297 (10th Cir. 2000). To establish a Franks violation for material omission, a defendant must first establish by a preponderance of the evidence that officers omitted material information intentionally or with reckless disregard for the truth. United States v. Tisdale, 248 F.3d 964, 973 (10th Cir. 2001). If the defendant meets this burden, the court will examine the affidavit as if the omitted information had been included to determine whether the affidavit would still give rise to probable cause. Id.; see also Stewart v. Donges, 915 F.2d 572, 583 n.13 (10th Cir. 1990) (opining that not every omission of relevant information will be regarded as material). Probable cause exists when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place. United States v. Basham, 268 F.3d 1199, 1203 (10th Cir. 2001) (citing United States v. Wicks, 995 F.2d 964, 972–73 (10th Cir. 1993)).

In this case, Brinlee has failed to show any intentional or reckless omissions from the affidavit in support of the search warrant. Sergeant Smallwood's affidavit states that he had spoken with several witnesses, including Officer McKee, who had interviewed Rains. The affidavit does not state that he personally spoke with Rains and Brinlee admits that "it is a reasonable inference to draw that Smallwood was aware of Raines's [sic] statement only through

McKee." Aplt. Br. at 8. Brinlee argues, however, that Smallwood "is imputed to have had all information about the primary source of information for the warrant[.]" Id. at 9. Even so, Brinlee has not explained how such imputed knowledge would establish reckless or intentional omissions by Sergeant Smallwood.

We agree with the district court that none of the omitted information was "material." That is, the inclusion of the information would not have altered the magistrate judge's probable cause finding. Brinlee claims that had the magistrate judge known the "full scope" of Rains' relationship with Brinlee, as well as a more detailed account of the events that day, the magistrate judge would have found "serious, reasonable doubt whether the information was sufficient to believe contraband would be found that day." Aplt. Br. at 12. In particular, Brinlee identifies various omitted facts which he claims are material: Rains' presence at Mr. Brinlee's house that day; her reason for being at the residence; her emotional nature that day; her attempt to offer information about Brinlee in exchange for assistance in retrieving her dog; and the police presence in the house that day. According to Brinlee, these facts would have undermined the reliability and credibility of her statements about the presence of drugs at his house. We disagree.

Brinlee claims that Rains' behavior on the day the warrant was obtained

was material because the magistrate judge could have reasonably inferred from Rains' behavior that she was under the influence of drugs or had a motive to lie. The affidavit, however, contained information about how Rains was cited for possessing drugs and drug paraphernalia, as well as information about how she used to live with Brinlee at the house and that she had personally seen drugs and drug sales while there. Based on that information, the magistrate judge could reasonably infer that Rains was a drug user who no longer lived with Brinlee because their relationship had ended. Likewise, the magistrate judge was alerted to the possibility that Rains might have been under the influence of drugs when she gave her statements, or that her relationship with Brinlee gave her a motive to lie about his activities. See United States v. Avery, 295 F.3d 1158, 1168 (10th Cir. 2002) (explaining that the affidavit need not include the informant's history when the information was enough to allow the magistrate judge to note that the informant was not a model citizen, or that the information was given for the informant's own advantage).

Further, the affidavit contained detailed descriptions given by Rains along with information from other sources, which enhanced her credibility and corroborated her statements about the presence of drugs in the house. According to the affidavit, Rains offered detailed, firsthand observations that Brinlee kept his drugs in a three-foot-high and three-foot-wide safe in his bedroom closet and

that he kept his drug money in a cash box inside a dresser drawer. See Illinois v. Gates, 462 U.S. 213, 234 (1983) (stating that an explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles an informant's tip to greater weight than might otherwise be the case, even given some doubt as to his or her motives). The affidavit also stated that during the previous six months Officer McKee had observed the type and volume of traffic at Brinlee's house which he thought was typical of drug trafficking. Sergeant Smallwood also stated in his affidavit that he had observed a surveillance camera mounted on an exterior door of the house, which he explained drug dealers often used at places of drug activity in order to avoid detection. United States v. Myers, 106 F.3d 936, 939 (10th Cir. 1997) (explaining that a police investigation can corroborate an informant's tip).

The omitted information concerning Rains' previous visits to Brinlee's house that day and the officers' protective sweep would not have altered the magistrate judge's determination that there was probable cause to issue the search warrant. Nothing in the record indicates that Rains actually entered Brinlee's house on her initial visit that day and on her second visit with Officer McKee she entered for only eight to ten seconds while she called out to her dog. Rains had little opportunity during those visits to observe any drugs or drug paraphernalia, especially if they were concealed as she had claimed. Thus, the weight accorded

her statement that she had last seen narcotics at the defendant's house approximately two weeks earlier was not diminished by her later presence in the house.[2]  For the same reason, the officers' security sweep for persons inside the house would not have allowed them to observe concealed drugs or drug paraphernalia.  Maryland v. Buie, 494 U.S. 325, 327 (1990) ("A 'protective sweep' is a quick and limited search of premises . . . conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding.").  The fact that the officers conducting the sweep did not see any concealed drugs or evidence of drug activity would therefore have had no impact upon the magistrate judge's decision.

In sum, we conclude the omitted information in this case was not material.  Stewart, 915 F.2d at 583 n.13.  That is, even if these facts were provided to the magistrate judge, he still would have determined that there was "a fair probability that contraband or evidence of a crime w[ould] be found" at Brinlee's residence.  United States v. Kennedy, 131 F.3d 1371, 1378 (10th Cir. 1997) (quoting Gates,

---

[2]  Nor would the two week period have rendered the information stale as Brinlee suggests in his brief.  See Myers, 106 F.3d at 939 (stating that the determination of whether information is stale depends on the nature of the crime and the length of criminal activity and holding that a five-month gap between when the police received the tips and when the search warrant was obtained did not render the information stale because the drug activities were "ongoing and continuous").

462 U.S. at 238).

The judgment of the district court is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge